Elsie **NELSON**

v.

**VOLKSWAGEN OF AMERICA, INC.,**
**Volkswagenwerk Aktiengesellschaft.**

**A. J. Paul NELSON**

v.

**VOLKSWAGEN OF AMERICA, INC.,**
**Volkswagenwerk Aktiengesellschaft.**

**Civ. A. Nos. 2768, 2769.**

United States District Court,
D. New Hampshire.

July 29, 1970.

James J. Kalled, Wolfeboro, N. H., for plaintiffs.

W. Wright Danenbarger, Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N. H., for defendant Volkswagen of America, Inc.

E. Paul Kelly, Sheehan, Phinney, Bass & Green, Manchester, N. H., for defendant Volkswagenwerk Aktiengesellschaft.

## OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

BOWNES, District Judge.

The defendants, Volkswagen of America, Inc. (V.W. of A.) and Volkswagen-

werk Aktiengesellschaft (V.W. of G.), have moved to dismiss all parts of the plaintiffs' complaints "seeking recovery under the theories of breach of warranty and/or strict liability on the grounds that such claims are barred by the six-year Statute of Limitations." See NH RSA 508:4 for Statute of Limitations.

The following facts have been alleged by the plaintiffs, and are assumed to be true for the purpose of these motions. On November 4, 1960, plaintiff A. J. Paul Nelson purchased a new Volkswagen Microbus. On April 13, 1961, he and his wife, Elsie Nelson, were driving in New Hampshire when the Microbus skidded, left the road, and overturned, injuring both of them. As a result of this accident, the plaintiffs filed complaints on March 23, 1967, against both defendants, V.W. of A. and V.W. of G.

It is clear that the plaintiffs commenced their actions more than six years after the purchase of the Volkswagen Microbus and less than six years after the accident in question. This raises the issues presented by these motions: (1) Does the statute of limitations in an action for breach of warranty start to run from the date of sale or from the date of the alleged injury? (2) Does the statute of limitations in an action based on strict liability in tort start to run from the date of sale or from the date of the alleged injury?

In deciding when the statute of limitations in an action for breach of warranty starts to run, I take the following factors into consideration: (a) Since the sale and accident occurred prior to the effective date of the Uniform Commercial Code (U.C.C.), July 1, 1961, the U.C.C. does not control this cause of action.[1] (b) There is a real question as to whether New Hampshire recognized any action for breach of implied warranty at common law. See Stephan v. Sears Roebuck and Co., 266 A.2d 855 (N.H. April 30, 1970). (c) The use of the theory of breach of warranty in products liability cases was a device developed before the coming of age of the doctrine of strict liability in tort to avoid the problem of proving lack of due care, required under common law negligence. This distortion of a contract theory into the tort area became unnecessary, at least in New Hampshire, when the Supreme Court of New Hampshire accepted the doctrine of strict liability in tort in Buttrick v. Arthur Lessard and Sons, Inc., 110 N.H. ——, 260 A.2d 111 (1969). With these factors in mind, I find that, prior to the U.C.C., there was probably no cause of action for breach of implied warranty; but, if such a cause of action did exist, the statute of limitations would run from the date of sale. Defendants' motion to dismiss all parts of plaintiffs' complaints seeking a recovery under the theory of breach of warranty are, therefore, granted.

The Court now turns to the question of when the statute of limitations in an action based on strict liability in tort starts to run—from the date of sale or the date of injury. Since the Supreme Court of New Hampshire has not yet spoken on this issue, I must determine what its decision would probably be. White v. Schnoebelen, 91 N.H. 273, 18 A.2d 185 (1941), leads me to believe it would decide that the statute of limitations starts running from the date of injury. In that case, the plaintiff sued for the negligent installation of lightning rod equipment which he claimed caused the loss of his property by fire. The issue was whether, in an action based on common law negligence, the statute of limitations started to run from the date of the negligent act which

1. NH RSA 382–A:1–101 n. 4 provides:

4 *Transactions Before Effective Date of This Act.*

(a) Transactions validly entered into before the effective date of this act and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred.

resulted in the damage or the date of the actual damage. The Court there said:

> Necessary elements of a cause of action based upon negligence are the causal negligence of the defendant, plus resulting harm to the plaintiff. Putting it another way, there must be negligence and harm, and they must have causal connection. Causation is thus more than a method of measuring damages; it is an element of the cause of action. It is like a connecting bridge between the negligence and the harm that gives rise to the cause of action. If the bridge be unbroken from negligence to harm, the right of action will accrue when the injury is suffered, provided the plaintiff's harm is not in part the result of his own fault.

> Usually the bridge is so short as to be crossed in a matter of months or even of moments. \* \* \* A long lapse of time may make difficult or even impossible proof that the bridge of causation is unbroken, but if it appear on the balance of probabilities to be intact, it will bear the necessary weight of conveying negligence to harm, so that the two may merge into a cause of action.

> \*   \*   \*   \*   \*   \*

> It is not suggested that one who installs a lightning rod system owes no duty of care towards one whose property may be damaged because of improper installation. The defendant seems to suggest, however, that if the negligent installation does not result in harm until six years have passed, the party to whom the duty is owed can have no right of action. This is not consonant with sound theory as to when rights of action for negligence accrue. Nor is it probable that the legislature intended that the statute of limitations should operate against the accrual of rights of action, rather than merely as a bar to rights of action after accrual. 91 N.H. at 275–276, 18 A.2d at 186–187.

The same rationale applies to the case at bar.

The New York Court of Appeals met our problem in Mendel v. Pittsburgh Plate Glass Co., 25 N.Y.2d 340, 305 N. Y.S.2d 490, 253 N.E.2d 207 (Ct.App. 1969), by ruling that the statute of limitations starts running from the date of sale. Its focus was on the burden that unfounded actions might impose on manufacturers.

> We are willing to sacrifice the small percentage of meritorious claims that might arise after the statutory period has run in order to prevent the many unfounded suits that would be brought and sustained against manufacturers ad infinitum. Surely an injury resulting from a defective product many years after it has been manufactured, presumptively at least, is due to operation and maintenance. It is our opinion that to guard against the unfounded actions that would be brought many years after a product is manufactured, we must make that presumption conclusive by holding the contract Statute of Limitations applicable to the instant action and limit appellants to their action in negligence. 305 N.Y.S.2d at 495, 253 N.E. 2d at 210.

This approach, in our opinion, does not meet the realities of life in today's society where the consumer is dependent on a remote manufacturer for many of the products he uses. The "repose" of the manufacturer must give way to the welfare of the consuming public, and if this means liability *in perpetuity,* so be it. Products containing defects when manufactured, which remain undetected, are veritable time bombs ready to explode in the face of the hapless consumer at any time. Manufacturers cannot escape their responsibility for creating such dangers by invoking statutes of limitations designed for contract cases. If it can be proven that the manufacturer was responsible for the defect, then it ought to be held responsible for the results.

The New Jersey Supreme Court in Rosenau v. New Brunswick, 51 N.J. 130,

238 A.2d 169 (1968),[2] stated the reasoning that I find persuasive.

The Appellate Division was apparently persuaded by the hardship which may result to [the defendant] by the plaintiffs' pursuit of their claim grounded on strict liability in tort [22 years after the sale]. But that hardship represents little above that necessarily entailed by the plaintiffs' negligence claim which is pursuable under the long-standing precedents in our State. It must be borne in mind that although the plaintiffs will be relieved of the responsibility of affirmatively establishing failure to exercise due care in the process of manufacture, they will still have the burden, intensified by the lapse of time, of establishing that the [product] was actually defective when it left [the defendant's] hands and that the defect proximately resulted in the damage to their property. (Citations omitted.)

On the other hand, the hardship to the plaintiffs under the Appellate Division's approach would indeed be severe. They had no claim against [the defendant] before the [product] broke causing damage to their [property]. And of course they had no right to sue [the defendant] before that time. When their right to institute action first accrued they moved with expedition asserting, *inter alia,* a claim grounded on the now well recognized doctrine of strict liability in tort. To hold them barred by limitations in these circumstances would comport neither with the terms nor the spirit of the statute. In considering the relative hardships *we must not lose sight of the crucial fact that [the defendant] originally placed the allegedly defective product in the stream of trade.*

*As manufacturer and distributor it is the one best situated to protect against consequential damage as a business risk of distribution, whereas the injured parties are wholly innocent and largely incapable of protecting themselves.* (Emphasis added.) 238 A.2d 176.

Finally, it seems to this Court that the time has come to disentangle the theories of breach of warranty and strict liability in tort and restore them to their logical spheres of influence. Breach of warranty is a contractual theory and should remain so. In states which accept the doctrine of strict liability in tort, the theory of breach of warranty should have no place in personal injury cases. Injuries resulting from defective products are tortious in nature and should not be governed by theories of contract law. Courts have long held that parties may not contract away their obligations with respect to due care. Certainly, it would be anomalous for me to now say that the doctrine of strict liability in tort, which was developed specifically to avoid the privity requirements in breach of warranty actions, as well as the necessity of proving lack of due care, is controlled by the statute of limitations for contract actions. I will not so restrict the doctrine of strict liability in tort and rule that in an action based on strict liability in tort, the statute of limitations starts running from the date of the alleged injury.

Since the plaintiffs filed their complaints within six years of the date of their alleged injuries, the defendants' motions to dismiss all parts of the plaintiffs' complaints seeking recovery under the theory of strict liability are denied.

So ordered.

2. This case overruled Rosenau v. New Brunswick, 93 N.J.Super. 49, 224 A.2d 689 (1966), cited by defendant V. W. of G.