ALBERTO RIVERA, SR., et al., Respondents, v. BERKELEY SUPER WASH, INC., Defendant and Third-Party Plaintiff, et al., Defendant; BOCK LAUNDRY MACHINE COMPANY, Defendant and Third-Party Defendant-Appellant, et al., Third-Party Defendants.

Second Department, April 15, 1974.

*Huber, Kirk & O'Connell (Alexander, Ash, Schwartz & Cohen* [trial counsel]; *Irwin H. Haut* and *Sidney A. Schwartz* of counsel), for appellant.

*Joseph Friedberg (Martin Levine* of counsel), for respondents.

SHAPIRO, Acting P. J. The question presented is whether the contract Statute of Limitations (which commences running at the time of sale) or the tort Statute of Limitations (which commences at the time of injury) is to be applied in this case. The determination is crucial to the infant plaintiff since, if the contract Statute of Limitations is applied, he would be deprived of the possibility of proceeding under the doctrine of strict products liability recently announced in *Codling* v. *Paglia* (32 N Y 2d 330) and amplified in *Velez* v. *Craine & Clark Lbr. Corp.* (33 N Y 2d 117). The new strict-products-liability doctrine permits recovery of damages for personal injuries suffered through the normal and intended use of a defective instrumentality or, as Judge JONES concisely stated it in the first paragraph of his opinion in *Codling* (p. 335), " we hold that today the manufacturer of a defective product may be held liable to an innocent

bystander, without proof of negligence, for damages sustained in consequence of the defect.''

As recently as 1969, by a 4 to 3 vote, the Court of Appeals in *Mendel* v. *Pittsburgh Plate Glass Co.* (25 N Y 2d 340) decided that the contract Statute of Limitations applies to a breach-of-warranty cause of action brought by a remote user of an allegedly defective product seeking recovery of damages for personal injuries. By reason of the *Codling* and *Velez* decisions, we hold that *Mendel* is not applicable to strict-products-liability cases and that the three-year limitation period for personal injury claims (CPLR 214, subd. 5) and the normal tort rule that the claim accrues at the time of the injury apply to the plaintiffs' causes of action which seek recovery on the strict-products-liability theory.

### THE FACTS

The infant plaintiff, Alberto Rivera, Jr., celebrated his eighth birthday on October 2, 1967. On that day, he accompanied his aunt while she did her laundry at the defendant Berkeley Super Wash, Inc. (Berkeley) self-service laundromat in Brooklyn. After the laundry was washed, it was placed by the infant's aunt, still wet, in a centrifugal laundry extractor manufactured by the defendant-appellant Bock Laundry Machine Company (Bock), of Toledo, Ohio, and sold and delivered by it sometime in 1959. The function of such a machine is to extract excess moisture from laundry after washing, thereby reducing the necessary drying time. The aunt started the extractor in operation and left to get change while the infant plaintiff remained behind. The lid of the extractor was supposedly incapable of opening during the machine's operating cycle.

On this occasion, however, and due to an alleged defect, the lid popped open while the machine was still in operation, with the interior compartment spinning at a high rate of speed.[1] The infant plaintiff reached in with his right arm in an attempt to remove the laundry, and some of the wash being whipped about caught his arm, causing multiple fractures of the arm and right scapula. The arm subsequently had to be amputated at the elbow.

The plaintiffs — the infant and his parents — commenced this litigation in 1967 (some eight years after the sale of the extractor

1. Although there is no indication in the present record as to why the extractor malfunctioned in this manner, we note the discussion of a similar occurrence described in *Westerberg* v. *School Dist. No. 792 of Todd County* (276 Minn. 1). (See, also, record on appeal in *Lewin* v. *Bock Laundry Mach. Co.*, 38 A D 2d 791.)

by Bock), seeking to recover damages for the personal injuries and loss of services resulting from alleged negligence in the design, manufacture and maintenance of the extractor. Subsequently, Berkeley commenced a third-party action against certain additional parties and also asserted a cross claim against Bock.

The plaintiffs' complaint was amended in March, 1973 by the addition of two causes of action on behalf of the infant and his parents, respectively, alleging breaches of the implied warranties of merchantability and fitness for use. Bock moved for summary judgment dismssing the breach-of-warranty causes of action, asserting that they were time barred by virtue of the expiration of the six-year Statute of Limitations (former Civ. Prac. Act, § 48; CPLR 213). The motion was denied, without prejudice to renewal following an examination before trial.

Upon completion of the discovery proceedings, the plaintiffs, in September, 1973, moved for leave to serve a further amended complaint setting forth yet two additional causes of action (as the fifth and sixth) on behalf of the infant and his parents. These additional causes of actions are grounded on Bock's strict liability in tort and are based on the recent decision of the Court of Appeals in *Codling* v. *Paglia* (32 N Y 2d 330, *supra*). Bock then (as a cross motion) renewed its motion for summary judgment as to the third and fourth causes of action. It is from the granting of leave to the plaintiffs to serve the further amended complaint and the concomitant denial of Bock's renewed motion that Bock presently appeals.

### A DISCUSSION OF THE LAW

The rapid growth and development of the law of products liability has been extensively noted.[2] In New York, the scope of a manufacturer's liability in product liability actions for personal injuries and property damage has been gradually expanded since *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382 [1916]) dispensed with the requirement of privity in cases based on negligent manufacture. The privity limitation retained vitality, however, in cases in which breach of warranty, either express or implied, was alleged (*Turner* v. *Edison Stor. Battery Co.*, 248 N. Y. 73 [1928]). Significant progress toward removing

---

2. See, e.g., Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L. J. 1099 (1960); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L. Rev. 791; The Expanding Scope of Enterprise Liability, 69 Col. L. Rev. 1084 (1969); Products Liability: Strict Liability in Tort, 13 ALR 3d 1057; Strict Products Liability and the Bystander, 64 Col. L. Rev. 916 (1964).

the privity barrier was made in *Greenberg* v. *Lorenz* (9 N Y 2d 195 [1961] [recovery for personal injuries on breach-of-warranty theory permitted for the infant family member not in privity with the retail dealer of a food product]); *Randy Knitwear* v. *American Cyanamid Co.* (11 N Y 2d 5 [1962] [manufacturer of a chemical used to treat fabrics held liable to a remote purchaser in an action on express warranty]; and *Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432 [1963] [breach of warranty held to be a " tortious wrong " (p. 436) and an airplane manufacturer cast in liability for wrongful death of a passenger resulting from a defective airplane component manufactured by an independent supplier]).

*Codling* v. *Paglia* (32 N Y 2d 330, *supra*) represents the culmination of the evolution in New York of the doctrine of strict products liability, a doctrine which earlier found acceptance in a number of other jurisdictions.[3] To be sure, the terms used to describe the cause of action which has evolved have caused their share of confusion but whether we speak in terms of " enterprise liability ", " strict liability in tort " or " strict products liability " (the term apparently preferred by our Court of Appeals) the broad principle laid down in *Codling* is as follows (p. 342): " Under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and

---

3. See, e.g., *Suvada* v. *White Motor Co.* (32 Ill. 2d 612 [1965]); *Greenman* v. *Yuba Power Prods.* (59 Cal. 2d 57 [1963]); *Nalbandian* v. *Byron Jackson Pumps* (97 Ariz. 280 concurring opinion [1965]); *Garthwait* v. *Burgio* (153 Conn. 284 [1965]); *Cornette* v. *Searjeant Metal Prods.* (147 Ind. App. 46); *Hawkeye-Security Ins. Co.* v. *Ford Motor Co.* (174 N. W. 2d 672 [Iowa, 1970]); *Dealers Transp. Co.* v. *Battery Distr. Co.* (402 S. W. 2d 441 [Ky. App., 1965]); *Meche* v. *Farmers Drier & Stor. Co.* (193 So. 2d 807 [La. App. 1967]); cf. *Cova* v. *Harley Davidson Motor Co.* (26 Mich. App. 602 [1970]); *State Stove Mfg. Co.* v. *Hodges* (189 So. 2d 113 [Miss., 1966]); *Williams* v. *Ford Motor Co.* (411 S. W. 2d 443 [Mo. App. 1966]); *Santor* v. *A & M Karagheusian* (44 N. J. 52 [1965]); *Buttrick* v. *Arthur Lessard & Sons, Inc.* (110 N. H. 36); *Lonzrick* v. *Republic Steel Corp.* (1 Ohio App. 2d 374, affd. 6 Ohio St. 2d 227); *Cochran* v. *Brooke* (243 Ore. 89); *Webb* v. *Zern* (422 Pa. 424); *Ford Motor Co.* v. *Lonon* (217 Tenn. 400 [1966]); *Shamrock Fuel & Oil Sales Co.* v. *Tunks* (416 S. W. 2d 779 [Tex.]); *Dippel* v. *Sciano* (37 Wis. 2d 443 [1967]).

(3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages." (See, also, *Singer* v. *Walker,* 32 N Y 2d 786 [1973]; *Velez* v. *Craine & Clark Lbr. Corp.,* 33 N Y 2d 117, *supra.*)[4] However, irrespective of the particular terminology employed, the clear intent of the recent decisions is to protect a party injured — be he purchaser, user or innocent bystander — by a defective product, subject to the conditions set forth by Judge Jones and quoted above (see, also, *Velez, supra,* p. 122).

Of course, the fact that New York now recognizes a strict-products-liability cause of action does not mean that breach of warranty under the Uniform Commercial Code no longer exists. The breach-of-warranty causes of action under the code are primarily related to the sales contract (see, e.g., Uniform Commercial Code, § 2–725) and are separate from a strict-products-liability cause of action, which is wedded to the concept of a tortious wrong. Actions for breach of warranty under the code are subject to all the limitations and requirements imposed by the code. Thus the code, enacted with the purpose, among others, of codifying and expanding the remedies available to parties to sales contracts, does not, and never attempted to, provide an exclusive remedy in the field of products liability. (See dissent of Judge Breitel [now Chief Judge] in *Mendel* v. *Pittsburgh Plate Glass Co.,* 25 N Y 2d 340, 351-352, *supra.*) The result of the legal development of a strict-products-liability cause of action is that redress for personal injuries caused by defective products may now be sought in New York under several different theories — (1) pure common-law negligence, (2) breach of warranty and (3) strict products liability — depending on the particular circumstances of the individual case.[5]

Since there is now a cause of action in strict products liability, we are here squarely confronted with the question posed at

---

4. We note in passing that this court spoke of a "warranty theory" in a post-*Codling* case in which we ruled, via a common-sense extension of the rule of *Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432, *supra*), that an injured plaintiff (purchaser and user) could assert a claim for redress against the manufacturer of an allegedly defective component part of the plaintiff's automobile (*Clark* v. *Bendix Corp.,* 42 A D 2d 727 [1973]).

5. For a discussion of the question of the interrelationship of the strict products liability and the implied warranty in the absence of privity theories of recovery, see, generally, 2 Frumer and Friedman, Products Liability, § 16A, subd. [4] (1973); *Rosenau* v. *City of New Brunswick* (51 N. J. 130, 143 [1968]; *Buttrick* v. *Arthur Lessard & Sons, Inc.,* 110 N. H. 36, 37–39; see, also, *International Union of Operating Engineers Local 57* v. *Chrysler Motors Corp.* (106 R. I. 248); *Jones* v. *Boggs & Buhl* (355 Pa. 242); 2 Restatement 2d, Torts, § 402 A, comment *m.*

the outset of this opinion, viz., which of two possible Statutes of Limitations applies — the six-year period for actions based upon a contractual obligation or liability (CPLR 213, subd. 2) or the three-year period for actions to recover damages for personal injuries (CPLR 214, subd. 5).[6]

The majority opinion in *Mendel* v. *Pittsburgh Plate Glass Co.* (25 N Y 2d 340, *supra*), as noted, held that breach-of-warranty causes of action, since they sound in contract, are governed by the six-year contract Statute of Limitations.[7] Further, *Mendel* reiterated the long-standing rule in New York that a cause of action for breach of warranty accrues *at the time of the sale* of the offending instrumentality (*Schwartz* v. *Heyden Newport Chem. Corp.*, 12 N Y 2d 212, 215 [1963]); see, also, *Mittasch* v. *Seal Lock Burial Vault*, 42 A D 2d 573, 574 [1973]). In reaching these conclusions the *Mendel* majority found the 1953 decision in *Blessington* v. *McCrory Stores Corp.* (305 N. Y. 140) to be controlling.

Recognizing that as an intermediate appellate court we are bound to follow an applicable decision of the Court of Appeals, unless subsequent events establish that the *raison d'etre* for the decision no longer exists, we have come to the conclusion that that is the fact here and that, on the operative facts in this record, *Mendel* is no longer viable.

*Blessington* involved a suit to recover damages for pain and suffering brought by the personal representative of a deceased infant against, among others, the retailer and the manufacturer of an inflammable cowboy suit which, when it came in contact with a flame, ignited and caused fatal burns. There, contrary to the facts in our case, *the plaintiff's causes of action in negligence against the defendants were time-barred by the then-applicable three-year negligence Statute of Limitations* (former Civ. Prac. Act, § 49, subd. 6). Hence, in order to afford the plaintiff a non-barred remedy, the cause of action directed

6. The four-year limitation period set forth in section 2–725 of the Uniform Commercial Code for actions for "breach of any contract for sale" is not applicable to the instant case, since it only has prospective application from September 27, 1964 (Uniform Commercial Code, § 2–725, subd. [4]).

7. The *Mendel* decision has been severely criticized by commentators and we believe justifiably so. Even an incomplete compilation of such critical commentary is impressive. See, e.g., Symposium on *Mendel* v. *Pittsburgh Plate Glass Co.* (six articles), 45 St. John's L. Rev. 63, 71, 76, 86, 96, 104 (1970); Annual Survey of New York Law, Civil Practice, McLaughlin, 22 Syracuse L. Rev. 55, 61 (1970); 39 Fordham L. Rev. 152, 156–160 (1970); *Nelson* v. *Volkswagen of Amer.*, 315 F. Supp. 1120–1122 [D. C. N. H., 1970]; *O'Keefe* v. *Boeing Co.*, 335 F. Supp. 1104, 1114–1115 [S. D. N. Y., 1971]. We have found no authoritative support for *Mendel*.

*against the retailer* was held to be based on an implied contractual obligation. Thus, said the majority, "such a cause of action *gets the benefit* of the six-year limit of subdivision 1 of section 48 of the Civil Practice Act" (*Blessington* v. *McCrory Stores Corp.*, 305 N. Y. 140, 147, *supra*; emphasis supplied).

Significant differences between the *Blessington* and *Mendel* situations are apparent. First, *Blessington* was decided well before the "citadel of privity" had even begun to be eroded in New York in breach-of-warranty suits. The breach-of-warranty cause of action in *Blessington* was brought against an immediate vendor, not a remote supplier. Thus, the privity requirement was satisfied and the contract Statute of Limitations seemed to be the logical and reasonable choice as the proper limitation period. On the other hand, at the time *Mendel* was decided, the once-formidable privity requirement had been riddled with exceptions (see, e.g., *Goldberg* v. *Kollsman Instrument Corp.*, 12 N Y 2d 432, *supra*). Thus, the *Mendel* majority's choice of the contract limitation period was less than compelling. Secondly, in *Blessington* the alternative to application of the six-year contract Statute of Limitations was to apply the Statute of Limitations for actions to recover damages for a personal injury resulting from negligence, which would have outlawed the plaintiff's cause of action.[8] When *Mendel* was decided, the possible alternative Statute of Limitations (CPLR 214, subd. 5) was (and still is) phrased in terms of actions to recover damages for a personal injury, *but not limited solely to negligence situations*. This alternative Statute of Limitations confronted by the *Mendel* court was, in our opinion, a far more plausible and fitting choice than the alternative statute faced by the *Blessington* court. Third, and perhaps most important in view of the policy considerations previously alluded to, the result of the application of the contract limitation period in *Blessington* was to *save* the infant's cause of action by virtue of the longer time period involved. In *Mendel*, rigorous application of the contract limitation period to the breach-of-warranty cause of action, which under the law accrued at the time of the sale of the defective instrumentality (a sale, it is noted, with which Mrs. Mendel had no involvement or connection), resulted in *defeating* the apparently meritorious claim.

---

8. Subdivision 6 of section 49 of the former Civil Practice Act provided as follows:

"§ 49. Actions to be commenced within three years. The following actions must be commenced within three years after the cause of action has accrued: * * * 6. An action to recover damages for an injury to property or a personal injury, resulting from negligence."

The *Mendel* majority was not unmindful of the illogical and unjust effect of its holding — the expiration of the Statute of Limitations before the cause of action ever came into existence — but nonetheless expressed a willingness to sacrifice certain meritorious claims in order to discourage the commencement of unfounded suits against manufacturers ad infinitum (*Mendel* v. *Pittsburgh Plate Glass Co.*, 25 N Y 2d 340, 346, *supra*). Apparently overlooked and ignored was the undeniable fact that a suit against a manufacturer based solely upon a claim of negligence can be, and often is, brought many years after the offending product was manufactured and placed on the market. Indeed, the pure negligence causes of action in the instant litigation were first asserted some eight years after the 1959 sale of the extractor (but within the allowable time period after the accident [CPLR 214, subd. 5]).

Further, the *Mendel* majority relied on the language of sections 2-725 and 2-318 of the Uniform Commercial Code (the provisions of which were not in effect at the time of the *Mendel* sale) for its conclusion that the contract Statute of Limitations applied. However, the Official Comment of the National Conference of Commissioners on Uniform State Laws and the American Law Institute to the latter section indicates that the section does not provide the exclusive remedy in strict-products-liability cases. Section 2-725, by its terms, is directed toward the genuine breach of contract situation involving buyer and seller, subdivision (1) thereof explicitly referring to actions "for breach of any contract for sale".[9] In any event, we believe that *Codling* overruled *Mendel's* reliance on the Uniform Commercial Code when it (*Codling*) provided an alternative remedy sounding in tort. We are fortified in this view when we recall that in *Velez* v. *Craine & Clark Lbr. Corp.* (33 N Y 2d 117, 124-125, *supra*) Judge JONES, again writing for the court, said that "strict products liability sounds in tort rather than in contract."

It has been suggested both that the plaintiff's burden of proof in strict-products-liability causes of action is "heavy rather than light"[10] and "really quite 'light'".[11] Wherever the truth may lie, it seems unwise to accept the sacrifice of any meritorious claim as the necessary price to be paid for the

---

9. See *Rosenau* v. *City of New Brunswick* (51 N. J. 130, 143, *supra*); 45 St. John's L. Rev. 90-91).

10. *Mendel* v. *Pittsburg Plate Glass Co.* (25 N Y 2d 340, 351 [dissent by Judge BREITEL (now Chief Judge)]).

11. 45 St. John's L. Rev., 102.

insulation of manufacturers from exposure to meritless claims, *especially since these same manufacturers are open to suits in negligence.* Moreover, and here we find further justification for our departure from *Mendel*, the policy decision behind the establishment of a strict-products-liability action having been made by the Court of Appeals, it would appear that more harm is done by refusing to recognize its essential character as based in tort than by intentionally misapprehending it for the sake of protecting against false claims and thereby potentially blunting its usefulness and obscuring its socially desirable goals in cases in which there is merit. It is clearly unjust to deny an injured party the possibility of compensation on the wholly arbitrary basis of a lapse of a period of time, the inception of which period of time is in no way connected with him and the passage of which bears no relation to any laches on his part.

Application of the contract Statute of Limitations to the strict-products-liability causes of action here, claims grounded in the concept of a tortious wrong, would only serve to duplicate the unfair *Mendel* result. The infant plaintiff Rivera was born in 1959, the same year in which the sale of the extractor took place. Eight years later this machine was to cause the loss of his arm. To apply the contract Statute of Limitations, with its concomitant rule that the cause of action accrued at the time of sale, would mean that the limitation period expired two years prior to the accident.

Since the Court of Appeals has seen fit to establish a new cause of action for strict products liability, independent of warranty, we see no valid reason for extending the *Mendel* rule to the strict-products-liability concept. *Rather we hold that the three-year Statute of Limitations applicable to actions to recover damages for personal injuries, with accrual of the action at the time of injury, is applicable as well to an action in strict products liability.* This approach has been adopted by at least one court at nisi prius and is followed in many other jurisdictions (see *Wilsey* v. *Mulkey Co.*, 56 Misc 2d 480; *Rosenau* v. *City of New Brunswick*, 51 N. J. 130 [1968]; *Nelson* v. *Volkswagen of Amer.*, 315 F. Supp. 1120, 1122–1123; *Abate* v. *Barkers of Wallingford*, 27 Conn. Sup. 46 [1967]; *Williams* v. *Brown Mfg. Co.*, 45 Ill. 2d 418, 431–433 [1970]; *Holifield* v. *Setco Inds.*, 42 Wis. 2d 750 [1969]; *Arrow Transp. Co.* v. *Fruehauf Corp.*, 289 F. Supp. 170 [Dist. Ct. Ore., 1968]; *Tucker* v. *Capitol Mach.*, 307 F. Supp. 291 [M. D. Pa., 1969]; *Hornung* v. *Richardson-Merrill, Inc.*, 317 F. Supp. 183 [Dist. Ct. Mont., 1970]; *Heavner* v. *Uniroyal, Inc.*, 63 N. J. 130 [1973]).

THE TECHNICAL PLEADING ISSUES

The summons and complaint in the instant case were served in 1967, and in its original form the complaint alleged only causes of action in pure negligence. These claims are concededly timely and are not attacked. The third and fourth causes of action, for breach of warranty, were not asserted for the first time until March, 1973, and they should have been dismissed, since they would have been time-barred even had they been asserted in the original complaint (former Civ. Prac. Act, § 48; CPLR 213; Uniform Commercial Code, § 2–725; *Mendel* v. *Pittsburgh Plate Glass Co.,* 25 N Y 2d 340, *supra*, which is still the law as to warranty causes of action).

The infant plaintiff, not having a claim for damages until 1967 (when he was injured) and thus not until then " entitled to commence an action " (CPLR 208), cannot invoke the benefit of the tolling provisions of section 60 of the former Civil Practice Act and CPLR 208 as to the third cause of action. The result thus is that the infant's breach of warranty cause of action is time-barred. Even were the tolling provisions of CPLR 208 available to the infant as to his (third) cause of action, his adult parents would not obtain the benefits of such a toll as to their derivative (fourth) cause of action based on breach of warranty (*Francies* v. *County of Westchester,* 3 A D 2d 850; *Constantinides* v. *Manhattan Tr. Co.,* 264 App. Div. 147, 151; *Pitrelli* v. *Cohen,* 257 App. Div. 845).

However, in view of our conclusion that a strict-products-liability cause of action is founded on a tortious wrong and thus is governed by accrual and limitation rules applicable to claims sounding in tort, the fifth cause of action, asserted on behalf of the infant plaintiff, is timely since it accrued in 1967 (when he was injured) and the CPLR 208 toll can be invoked. The toll is not applicable to the derivative (sixth) cause of action and thus the plaintiffs' motion, insofar as it sought leave to assert that cause of action, should have been denied.

The order appealed from should therefore be modified in accordance with this opinion, on the law, and, as so modified, affirmed, with $20 costs and disbursements to the plaintiffs.

BENJAMIN, J. (dissenting). In the opening sentence of *Codling* v. *Paglia* (32 N Y 2d 330, 335) the Court of Appeals stated: " We hold that today the manufacturer of a defective product may be held liable to an innocent bystander, without proof of negligence, for damages sustained in consequence of the defect." This, and nothing more, appears to be the holding

of that case. In the course of the opinion the court noted that its holding was made under a "doctrine of strict products liability" (p. 342) and then enunciated the now familiar *Codling* test which, in essence, requires that the plaintiff establish whether, at the time of injury or damages, the allegedly defective product was being used properly for its intended purpose, and whether the plaintiff was free from contributory negligence.

I read *Codling* as having removed the remaining "*pillar*" from the beleaguered citadel of privity, thus completing the trend in New York law toward extending to "any" person injured by a defective product the full benefits of the express and implied warranty protection contained in the Uniform Commercial Code, provided the test above referred to is met (cf. *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382; *Turner* v. *Edison Stor. Battery Co.,* 248 N. Y. 73; *Blessington* v. *McCrory Stores Corp.,* 305 N. Y. 140; *Randy Knitwear* v. *American Cyanamid Co.,* 11 N Y 2d 5; *Goldberg* v. *Kollsman Instrument Corp.,* 12 N Y 2d 432).

Unlike the majority, I do not believe that the *Codling* holding requires us to infer that the viability of *Mendel* v. *Pittsburgh Plate Glass Co.* (25 N Y 2d 340) has been diminished. I am not unmindful of the language contained in *Velez* v. *Craine & Clark Lbr. Corp.* (33 N Y 2d 117, 124-125), wherein the court stated that "strict products liability sounds in tort rather than in contract." There is nothing novel in this pronouncement.

In *Goldberg* (*supra* p. 436) the court stated: "A *breach of warranty*, it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a *tortious wrong* suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer" (emphasis supplied). Yet when the above-quoted language was advanced to the court in *Mendel* for the proposition that "*Goldberg* v. *Kollsman Instrument Corp.* * * * created in favor of third-party strangers to the contract, a cause of action in *tort* and *not in warranty*" (p. 343, last two emphases supplied), the *Mendel* court rejected the proposition and held: "While there is language in the majority opinion in *Goldberg* approving of the phrase 'strict tort liability', it is clear that *Goldberg* stands for the proposition that notwithstanding the absence of privity, the cause of action which exists in favor of third-party strangers to the contract is an action for breach of implied warranty" (pp. 343-344).

Indeed, the court in *Mendel* stated that "strict liability in tort and implied warranty in the absence of privity are merely

different ways of describing the very same cause of action"
(p. 345). This is a clear recognition of the principle that
liability for a breach of warranty is "strict" only in the sense
that no element of fault is involved.

The terminology employed in the area of products liability,
i.e., "strict liability in tort" and "strict products liability",
has resulted in some confusion. Language utilized in the
*Codling* case must therefore be interpreted against the back-
ground of cases which preceded it.

In *Codling* the court did not establish a new tort liability
meant to replace the statutorily established Uniform Commercial
Code action for breach of warranty. I disagree with the
majority's view that the code action can exist side by side, as it
were, with the court "enacted" action for the same relief
sounding strictly in tort and governed by a different Statute of
Limitations.

The effect of the majority's holding is to judicially "repeal"
those provisions of the Uniform Commercial Code imposing
a four-year Statute of Limitations, from the date of sale, on
actions where the plaintiff seeks damages for personal injuries
based upon breach of warranty. I find the comments of the
court in *Mendel* with respect to sections 2–725 and 2–318 of
the Uniform Commerical Code particularly pertinent and
determinative.

I cannot agree with the view of my brethren that an action
for breach of warranty with its concomitant contract period
of limitation is "clearly unjust", in that it is grounded on a
wholly arbitrary basis of a period of time which bears no rela-
tion to the time of injury.

The fact that the four-year Statute of Limitations was made
applicable to breach-of-warranty actions represents a legislative
determination that at some time a manufacturer's contractual
obligations should be put to rest. Thus, section 2–725 of the
Uniform Commercial Code provides, *inter alia*, a four-year
period measured from the time of sale for the commencement
of an action based upon breach of warranty "regardless of
the aggrieved party's lack of knowledge of the breach" (subd.
[2]). CPLR 201 provides, *inter alia*, that "no court shall extend
the time limited by law for the commencement of an action."
In my opinion, the Legislature has clearly spoken in this area.
If so basic a tenet is to be changed, it should be done by the
Legislature and not by the courts.

The availability of an action in negligence leaves the plaintiff
with a viable remedy where the warranty period of limitation

has expired. In *Codling* (32 N Y 2d 330, 337, *supra*) this portion of the Trial Judge's charge was held sufficient: " ' While the burden is upon the plaintiff to prove that the product was defective and that the defect existed while the product was in the manufacturer's possession, plaintiff is not required to prove the specific defect, especially where the product is complicated in nature. Proof of necessary facts may be circumstantial ' ". Thus, a person injured by a defective product may elect to pursue an action in common-law negligence or an action for breach of warranty, provided it is not time-barred.

In addition, I disagree with the reading given by the majority to the Official Comment to section 2–318 of the Uniform Commercial Code. There is nothing in that comment which indicates that the code does not provide the exclusive remedy in strict liability cases.

Accordingly, as above indicated, the branch of the plaintiffs' motion which was to amend the complaint to assert a cause of action in strict products liability on behalf of the infant plaintiff should have been denied. The order under review should be reversed, the plaintiffs' motion denied and the cross motion of defendant Bock Laundry Machine Company granted.

COHALAN, J. (dissenting). I dissent. On the authority of *Mendel* v. *Pittsburgh Plate Glass Co.* (25 N Y 2d 340), the order under review should be reversed, the plaintiffs' motion denied and the cross motion of defendant Bock Laundry Machine Company granted.

CHRIST and MUNDER, JJ., concur with SHAPIRO, Acting P. J.; COHALAN and BENJAMIN, JJ., dissent and vote to reverse the order, to deny plaintiffs' motion and to grant the cross motion of defendant Bock Laundry Machine Company, with separate opinions.

Order modified, on the law, (1) by inserting in the first decretal paragraph thereof, immediately after the passage that plaintiffs' motion for leave to add two causes of action to their amended complaint, as the fifth and sixth causes, is granted, the following: " as to the proposed fifth cause of action and denied as to the proposed sixth cause of action "; and (2) by striking from the third decretal paragraph thereof, which denied appellant's cross motion, the word " denied " and substituting therefor the word " granted ". As so modified, order affirmed, with $20 costs and disbursements to the plaintiffs.