336 A.2d 555.

ALBERT ROMANO *et ux. vs.* WESTINGHOUSE ELECTRIC Co. *et al.*

APRIL 3, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action for damages to property brought in the Superior Court by Albert Romano and

Marie Romano, husband and wife, against Westinghouse Electric Corporation (hereinafter called Westinghouse), a large national corporation engaged in the manufacture of electrical products, and against Greenwood Electrical Supply Co., Inc. (hereinafter called Greenwood), a Rhode Island corporation engaged in the sale of electrical supplies and equipment. The complaint alleges that in February 1964, Albert Romano, one of the plaintiffs, purchased from the defendant Greenwood a color television set designed and manufactured by the defendant Westinghouse. The complaint further alleges that on March 3, 1970, the television set exploded, setting fire to the plaintiffs' house and causing extensive property damage. Four counts of liability are set forth: breach of warranty, negligence, *res ipsa loquitur,* and strict liability in tort. Pursuant to Super. R. Civ. P. 13(g), the defendant Greenwood filed a cross-claim against the defendant Westinghouse which stated in effect that if the plaintiffs were successful in any of their counts against Greenwood, Greenwood as the retailer should in turn recover against Westinghouse the manufacturer.

The defendant Westinghouse moved to dismiss both plaintiffs' complaint and defendant Greenwood's cross-claim on the ground that the statute of limitations had run as to all four counts set forth in the complaint. The Superior Court justice joined Greenwood in this motion to dismiss, which he then granted, both as to plaintiffs' complaint and Greenwood's cross-claim. From this judgment plaintiffs and defendant Greenwood have each made a timely appeal.

The defendants argue that G. L. 1956 (1969 Reenactment) §6A-2-725[1] is an insuperable bar to plaintiffs' claim

---

[1]The relevant portions of §6A-2-725 read as follows:

"6A-2-725. Statute of limitations in contracts for sale.—(1) An action for breach of any contract for sale must be commenced within four (4)

in warranty. As plaintiffs have neither briefed nor argued this count, we will treat it as waived under Rule 16(a) of the Supreme Court Rules.

All three parties either assume or expressly state that §9-1-13 is the section properly applicable to all counts of the instant action except the breach of warranty count. This section reads as follows:

> "9-1-13. Limitation of actions generally.—Except as otherwise specially provided, all civil actions shall be commenced within six (6) years next after the cause of action shall accrue, and not after."

The assumption that §9-1-13 is the proper statute of limitations for the noncontractual counts of a suit for damages resulting from a defective product is in accord with our decisions in *Kelly* v. *Ford Motor Co.*, 110 R. I. 83, 290 A.2d 607 (1972), and *International Union of Operating Eng'rs, Local 57* v. *Chrysler Motors Corp.*, 106 R. I. 248, 258 A.2d 271 (1969). There we held that §6A-2-725 was applicable only to those situations involving a buyer-seller relationship and that it therefore did not govern a warranty action against a manufacturer.

The only question properly presented by this appeal is at what point a cause of action accrues under §9-1-13 in a products liability case. That the answer to this question is not clear on the face of the statute is indicated by the differing results reached by courts of other jurisdictions when construing very similar statutes. Nor is this problem better left to legislative determination, despite the underlying policy issues. In *Wilkinson* v. *Harrington*, 104 R. I. 224 at 229-30, 243 A.2d 745 at 749 (1968), an action for medical malpractice in which we were called upon to

---

years after the cause of action has accrued. * * *

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made * * *."

determine when a cause of action accrued under §9-1-14, we said:

> "The realities of the legislative process persuade us that courts should not defer questions to the enacting branch of state government merely because the questions may in some form or another relate to public policy. * * * When presented with issues inextricably entwined with abstruse legalistic concepts and complex principles of law affecting the rights and duties of the public, there can be no doubt that the courts are the most suitable and logical forums for their determination."

The defendants first address themselves to plaintiffs' count in strict liability. Noting that both strict liability and warranty may rise out of a sales situation and both involve imposition of liability without proof of negligence, defendants argue that strict liability sounds in warranty, and that while §6A-2-725 is not actually applicable, the accrual of an action governed by §9-1-13 should be interpreted in conformance with the legislative intent expressed in §6A-2-725(2).

We are not impressed with this discovery of legislative intent. The comment accompanying §6A-2-725 indicates that the section was actually intended to provide a uniform period of limitations for "sales contracts," thereby eliminating the jurisdictional variations which have troubled companies doing business on a nationwide scale, and not to dictate a period of limitations to tort actions carried on against both manufacturer and retailer. In furtherance of this intent, various jurisdictions have held that §2-725 of the Uniform Commercial Code explicitly relates to actions "for breach of any contract for sale" and does not apply to tort actions between consumers and suppliers who may never have been in a commercial relationship. *Matlack, Inc.* v. *Butler Mfg. Co.*, 253 F.Supp. 972 at 976 (E. D. Pa. 1966); *Abate* v. *Barkers of Walling-*

*ford, Inc.*, 27 Conn. Supp. 46 at 51-52, 229 A.2d 366 at 369 (1967); *Rosenau* v. *City of New Brunswick*, 51 N. J. 130 at 143, 238 A.2d 169 at 175-76 (1968); *Kirkland* v. *General Motors Corp.*, 521 P.2d 1353 at 1361-62 (1974 Okla.); Rapson, *Products Liability Under Parallel Doctrines: Contrasts Between the Uniform Commercial Code and Strict Liability in Tort*, 19 Rutgers L.Rev. 692 at 706 (1965). Our decision in *Kelly* v. *Ford Motor Co.*, *supra*, follows this line of authority by confining the action of §6A-2-725 to situations involving an actual buyer-seller relationship. We do not, therefore, feel constrained by a legislative directive to construe §9-1-13 in accord with the accrual time set out in §6A-2-725(2).

Regarding defendants' argument that strict liability should sound in warranty regardless of the impact of §6A-2-725, in *Ritter* v. *Narragansett Elec. Co.*, 109 R. I. 176, 283 A.2d 255 (1971), this court adopted the doctrine of strict liability in tort as set forth in Restatement (Second) *Torts* §402A (1965). In so doing we quoted with approval from *Miller* v. *Preitz*, 422 Pa. 383 at 421, 221 A.2d 320 at 339 (1966), where that court said:

> "Thus, whether the defendant should be strictly liable for injuries caused by a defective product is a question which cannot be determined by resort to doctrines of contract law, such as privity of contract, which developed in response to considerations for the most part not here relevant. The matter is solely one of policy and should be approached without the encumbrance that reference to contract law needlessly imposes."

*Ritter* placed major reliance on the commentaries accompanying §402A to explicate the meaning and application of the newly adopted section. *Ritter* v. *Narragansett Elec. Co.*, *supra* at 190, 283 A.2d at 262. Comment *m* emphasizes that strict liability in tort is a doctrine free of the restrictions surrounding an action based on a contract for

the sale of goods, and that it was developed for the reason that the remedies of the consumer were unduly limited by the peculiarities of the law of sales. As we recognized in *Ritter*, §402A had its genesis in a California case, *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal. Rptr. 697 (1963), where that court said,

> "* * * the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed." *Id.* at 63, 377 P.2d at 901, 27 Cal. Rptr. at 701.

Various jurisdictions have considered the problem of whether aspects of a contract's statute of limitations should be imported into a strict liability action. The majority have rejected this mixing of strains as creating an analytical hybrid, unresponsive to the essential thrust of the strict liability doctrine. *Anderson* v. *Fairchild Hiller Corp.*, 358 F.Supp. 976 (D. Alaska 1973); *Nelson* v. *Volkswagen of America, Inc.*, 315 F.Supp. 1120 (D. N.H. 1970); *Arrow Transp. Co.* v. *Fruehauf Corp.*, 289 F.Supp. 170 (D. Ore. 1968); *Wetzel* v. *Commercial Chair Co.*, 18 Ariz. App. 54, 500 P.2d 314 (1972); *Heavner* v. *Uniroyal, Inc.*, 63 N. J. 130, 305 A.2d 412 (1973); *Kirkland* v. *General Motors Corp., supra.* We agree with this line of decisions.[2]

Finally, it should be noted that if strict liability is held to sound in warranty, it could do so only where the suit

---

[2]The major case to the contrary is *Mendel* v. *Pittsburgh Plate Glass Co.*, 25 N.Y.2d 340, 253 N.E.2d 207, 305 N.Y.S.2d 490 (1969). There the New York Court of Appeals held that breach of warranty and strict liability in tort are two ways of describing one cause of action which sounds in contract, and that only the contract statute of limitations should apply. The case, however, included a very strong dissent, and

458

involves two directly contracting parties or where the plaintiff is a third-party beneficiary of the buyer under §6A-2-318. This construction would lead to one set of rules for actions against the manufacturer and another for actions against the retailer, a very awkward situation where both are sued in the same action or where the retailer cross-claims against the manufacturer.

*Ritter* v. *Narragansett Elec. Co., supra,* involved a suit against both the manufacturer and the retailer, and the concept of strict liability in tort was specifically extended to include the latter. Implicit in this extension is the notion of parallel theories of recovery in contract and tort, each with its separate analytical elements and procedural conditions precedent.[3] Any other approach is not only impractical but involves the castration of the doctrine of strict liability in tort as adopted in *Ritter.*

Having determined that strict liability sounds in tort, and that §9-1-13 must be interpreted without reference to contract principles, we still have before us the question of when a cause of action accrues in a products liability case. Authorities are generally agreed that proof of actual damages is an essential part of a plaintiff's case in a negligence action. 2 Harper & James, *Torts* §25.1 at 1300 (1956); McCormick, *Damages* §22 at 88 (1935); Prosser, *Torts* §30 at 143 (4th ed. 1971); CCH *Products Liability Reporter* §4380 at 4166. This court has held that in an

---

recent decisions in the lower New York courts have not followed the majority's position. *Lewis* v. *John Royle & Sons,* 357 N.Y.S.2d 601 (Sup. Ct. 1974); *Rivera* v. *Berkley Super Wash, Inc.,* 44 App.Div.2d 316, 354 N.Y.S.2d 654 (1974); *Victorson* v. *Kaplan,* 75 Misc.2d 429, 347 N.Y.S.2d 666 (Sup. Ct. 1973).

[3]*See also Temple Sinai-Suburban Reform Temple* v. *Richmond,* 112 R. I. 234 at 238, 308 A.2d 508 at 510 (1973), where we said liability in tort against a manufacturer or a supplier may be determined by the application of tort principles regardless of the existence or non-existence of a contractual relationship.

action of trespass on the case for negligence brought to recover damages for personal injuries the statute of limitations began to run at the time of the injury.[4] *Byron* v. *Great American Indem. Co.*, 54 R. I. 405 at 407, 173 A. 546 at 547 (1934). In *Wilkinson* v. *Harrington, supra,* a negligence action for medical malpractice, we went one step further and adopted the rule that in medical malpractice suits the statute of limitations does not commence until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that he has sustained an injury as a result of the physician's negligent treatment.

*Ritter* held that strict liability in tort should be viewed as a tort action in which, for reasons of policy, negligence need not be proven. *Ritter* v. *Narragansett Elec. Co., supra* at 190, 283 A.2d at 262. Given this interpretation, the time of accrual of a cause of action in strict liability should be the same as in a negligence action, the time of the injury.

Many jurisdictions have come to the conclusion that the non-contractual counts of a products liability case should be governed by a statute of limitations running from the time of injury or from the time the plaintiff discovered or reasonably should have discovered his injury. *Manning* v. *Altec, Inc.*, 488 F.2d 127 (6th Cir. 1973); *Alabama Great Southern R.R.* v. *Allied Chemical Corp.*, 467 F.2d 679 (5th Cir. 1972); *Anderson* v. *Fairchild Hiller Corp., supra; Boains* v. *Lasar Mfg. Co.*, 330 F.Supp. 1134 (D. Conn. 1971); *Nelson* v. *Volkswagen of America, Inc., supra; Arrow Transp. Co.* v. *Fruehauf Corp., supra; Wetzel* v. *Commercial Chain Co., supra; Giglio* v. *Conn. Light*

---

[4] *Res ipsa loquitur*, while a separate count in plaintiffs' complaint, is only an evidentiary theory, and for present purposes will be treated as a simple negligence action.

& Power Co., 29 Conn. Supp. 302, 284 A.2d 308 (1971); *Williams* v. *Brown Mfg. Co.*, 93 Ill. App.2d 334, 236 N.E. 2d 125 (1968), *rev'd on other grounds*, 45 Ill.2d 418, 261 N.E.2d 305 (1970); *Heavner* v. *Uniroyal, Inc., supra; Rosenau* v. *City of New Brunswick, supra; Lewis* v. *John Royle & Sons, supra; Rivera* v. *Berkley Super Wash, Inc., supra; Victorson* v. *Kaplan, supra; O'Neal* v. *Black & Decker Mfg. Co.*, 523 P.2d 614 (Okla. 1974); *Kirkland* v. *General Motors Corp., supra; Sims* v. *Southland Corp.*, 503 S.W.2d 660 (Tex. Civ. App. 1973); *Holifield* v. *Setco Industries, Inc.*, 42 Wis.2d 750, 168 N.W.2d 177 (1969). We agree that the statute of limitations for the noncontractual counts of an action for damages caused by a defective product does not begin to run before the time of the injury. Whether it is tolled until the injury is discovered is a question not properly before us.

The defendants, however, argue that in a products liability case brought to recover property damages, public policy demands that the cause of action be deemed to accrue at the time of the sale of the allegedly defective product. *See Beal* v. *General Motors Corp.*, 354 F.Supp. 423 (D. Del. 1973); *Coumoulas* v. *Service Gas, Inc.*, 10 Ill. App.3d 273, 293 N.E.2d 187 (1973); *Sellers* v. *Friedrich Refrigerators, Inc.*, 283 N. C. 79, 194 S.E.2d 817 (1973); *Jackson* v. *General Motors Corp.*, 223 Tenn. 12, 441 S.W.2d 482 (1969); *Metal Structures Corp.* v. *Plains Textiles, Inc.*, 470 S.W.2d 93 (Tex. Civ. App. 1971). They suggest that the accrual time in property damage cases should be different from that in personal injury cases, that any rule other than accrual at the time of sale would lead to a drastic proliferation of claims, that it is unfair to require a supplier to defend against a suit based on a product which may have passed out of his control many years before, and that judicial acceptance of indefinite

liability would have a chilling effect on all business activity.

We can perceive no good reason to find a different time of accrual in property damage actions than in personal injury actions. The degree of hardship involved may well be the same in both instances, and both ultimately devolve to a question of monetary remuneration. If a personal injury is less likely to lie dormant for an extended period of time, this simply indicates there is a greater need for an indefinite time of accrual in actions for property damage. That such a situation would lead to a proliferation of claims is not a reason to withhold relief, but to grant it.

In *Wilkinson v. Harrington, supra,* we noted that the policy behind a statute of limitations is to prevent a plaintiff from gaining an unfair advantage by carelessly or willfully sleeping on his rights, not to provide a strictly finite period of potential liability on which the tort-feasor may rely. As such, an indefinite time of accrual is not in conflict with the essential rationale of the statute of limitations. Any unfairness to defendants in requiring them to defend against unavoidably delayed actions is more than balanced by the intrinsic injustice of barring plaintiffs' action before it can reasonably be brought. As we said in *Wilkinson v. Harrington, supra* at 238, 243 A.2d at 753:

> "To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust."

Nor are defendants' economic arguments compelling. The purpose of the law of products liability is to take the burden of the injury from the consumer, who cannot

protect himself and who may face economic ruin, and transfer it to the supplier. *Ritter* v. *Narragansett Elec. Co., supra* at 189, 283 A.2d at 262. The supplier in turn may take out insurance, factoring the annual premiums into his overhead, and thus spread the cost of the injury among the general public.

Furthermore, even strict liability is not liability without fault. The plaintiffs must still prove that the product contained a defect when it left the hands of defendant supplier, and that the defect was the proximate cause of the injury on which plaintiffs are suing. As plaintiffs have the burden of proof of establishing these elements, the passage of time is likely to subject all but the most conclusive suits to a directed verdict.[5]

For those reasons we remain unpersuaded by the defendants' policy arguments. We will, therefore, hold that the statute of limitations set forth in §9-1-13 did not begin to run against the plaintiffs until they suffered the damage for which they ask recovery. As the injury here was concurrent with the discovery of such injury, we need not consider whether the discovery rule adopted in *Wilkinson* extends to products liability cases.

The plaintiffs' appeal is sustained, the appeal of the defendant, Greenwood Electrical Supply Co., Inc., is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court.

Mr. Justice Joslin, dissenting in part and concurring in part. In this state, and generally elsewhere, a person who in the course of his business sells a defective and unreasonably dangerous product should be responsible for harm resulting to the person or property of the user or consumer, even in the absence of negligence or contractual

---

[5] Even *res ipsa loquitur* cannot easily leap this hurdle, as the longer the delay, the better opportunity defendant will have to interpose alternative theories of causation.

privity. *See Ritter* v. *Narragansett Elec. Co.,* 109 R. I.
176, 283 A.2d 255 (1971); *Rampone* v. *Wanskuck Bldgs.,
Inc.,* 102 R. I. 30, 227 A.2d 586 (1967); *Henry* v. *John W.
Eshelman & Sons,* 99 R. I. 518, 525, 209 A.2d 46, 50 (1965)
(Joslin, J., concurring). This doctrine is of comparatively
recent origin, and its principal justification is that the
public interest in human life and safety demands "that
the burden of accidental injuries caused by products in-
tended for consumption be placed upon those who market
them * * *" and who owe to the consumers of those
products the maximum of protection. 2 Restatement
(Second) *Torts* §402A, comment *c* at 350 (1965).

Suits to enforce this kind of liability may be predicated
upon either a theory of breach of warranty or one of
strict liability in tort independent of either contract or
negligence. 2 Restatement (Second) *Torts* §402A, com-
ment *b* at 349 (1965). Irrespective of which theory is
pursued, the proof needed is "very largely the same,"
Prosser, *Torts* §103 at 671 (4th ed. 1971), and the two
theories, basically, "are merely different ways of describ-
ing the very same cause of action." *Mendel* v. *Pittsburgh
Plate Glass Co.,* 25 N.Y.2d 340, 345, 253 N.E.2d 207, 210,
305 N.Y.S.2d 490, 494 (1969).

We are concerned in this case, however, not with the
existence or nature of plaintiffs' causes of action against
the defendant-manufacturer or the defendant-retailer, but
with when those causes accrued under the applicable stat-
utes of limitations. I agree with the majority that today's
decision against defendant-manufacturer is consistent with
*Kelly* v. *Ford Motor Co.,* 110 R. I. 83, 290 A.2d 607 (1972),
and *International Union* v. *Chrysler Motors Corp.,* 106
R. I. 248, 258 A.2d 271 (1969), which hold that the 4-
year limitations period contained in G. L. 1956 (1969 Re-
enactment) §6A-2-725 applies only in actions between
purchaser and seller. I agree also with the reasoning that

customarily the limitations period for injuries to person or property in negligence cases does not begin to run until the damage for which the recovery sought is sustained, and that it is supportable to apply that principle to plaintiffs' strict liability action against defendant-manufacturer.

Notwithstanding those agreements, I believe that products liability cases present distinctive statute of limitations problems, *see* 2 Anderson, *Uniform Commercial Code* §2-725:3 at 554 (2d ed. 1971), and accordingly, I supplement the majority opinion in order to focus attention on what appear to me to be some of the uneven effects produced by the conventional application of the several limitations periods currently operative in this field. In addition, I disagree with the majority's conclusion that the decision in plaintiffs' case against defendant-retailer should be the same as that against defendant-manufacturer, a result which follows only because their complaint is predicated primarily on strict liability rather than on breach of warranty.

Admittedly, the §6A-2-725 directive that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" directly controls only in actions for breach of contract or warranty. But actions subject to that statute presumably can include those for damage caused by defective products delivered in an unreasonably dangerous condition. For this reason I regard that legislation as a clear expression of policy that, at least in disputes between contracting parties, it is "most appropriate to modern business practice" for one being charged under a strict liability theory to be given notice of a claim against him before it becomes stale and before he reasonably could be expected to dispose of evidence required for his defense. *See* Comment, §6A-2-725. I believe, moreover, that it would be inconsistent with that clear expression of legislative policy to apply different

accrual of action rules to purchasers seeking compensation for identical injuries merely because they pursue theoretically different but substantially similar alternative theories of recovery. Because this dissent is grounded on deference to what I regard as an existing statement of legislative policy, it does not conflict with the principle, to which I adhere, that courts need not defer to future legislative responses to questions of public policy. *See Wilkinson* v. *Harrington,* 104 R. I. 224, 229-30, 243 A.2d 745, 749 (1968).

I fully recognize that the view I take in dissent leads to the anomalous result that plaintiffs in this case may be able to proceed against defendant-manufacturer but not against defendant-retailer. This, however, is but one of the dilemmas arising under the several limitations statutes currently operating in products liability cases. These predicaments occur because the statutory and decisional law makes available parallel theories of recovery controlled by varying limitations periods. While different rules of limitations and disparate consequences may in fact be warranted, as the majority suggest, because of theoretically distinct relationships and duties existing in the products liability context, I suspect that many of those distinctions are artificial and that the apparent incongruities thus arising are neither necessary nor appropriate.

If there is merit in these suspicions, it might be preferable for the results in products liability actions to turn on the transactional facts common to those cases rather than on the theoretical characterization of a given action as one to enforce strict liability or one to recover damages for breach of warranty. If the Legislature were to agree with this view, it might decide to exercise its historical role and explore how, as a matter of public policy, traditional statutes of limitations should be applied in this comparatively new field of products liability, and whether

new statutes are needed, "* * * to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation." *Josephs* v. *Burns*, 260 Ore. 493, 503, 491 P.2d 203, 207-08 (1971). *See Twomey* v. *Carlton House of Providence, Inc.*, 113 R. I. 264, 269-70, 320 A.2d 98, 101 (1974).

*McOsker, Isserlis & Davignon, David J. McOsker,* for plaintiffs.

*Keenan, Rice, Dolan, Reardon & Kiernan, Leonard A. Kiernan, Jr., Dennis S. Baluch,* for defendant Westinghouse Electric Co.; *Budlong, Clough, Lewis & Ryan, Ralph T. Lewis, Jr.,* for defendant Greenwood Electrical Supply Co., Inc.