EDGAR F. COPELAND *vs.* BOSTON DAIRY COMPANY.

Franklin.    September 15, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Contract. Milk. Evidence,* Burden of proof. *Agency.*

A contract to sell milk means a contract to sell milk of the standard quality required by R. L. c. 56, § 56.

In an action for the price of milk the burden is on the plaintiff to prove that the milk furnished by him was of the standard quality required by R. L. c. 56, § 56.

In an action by a farmer against a milk dealer for milk sold and delivered, it appeared, that the milk was put into cans furnished by the defendant and was collected from the plaintiff and other farmers by a teamster, who was paid by the defendant a fixed price for the transportation of each can, which was deducted from the sum agreed to be paid to the farmers. The teamster made his own arrangement with the farmers for the sum per can to be paid for the transportation. Each month a pass book was furnished by the defendant to the teamster, in which he recorded daily the number of cans of milk furnished by each farmer, and at the end of each month forwarded the book to the defendant. Certain of these pass books were admitted in evidence against the objection of the defendant. *Held,* that if, as seemed, the teamster was paid both by the plaintiff and the defendant, he was their common agent and the pass books were admissible against either.

CONTRACT for the price of milk alleged to have been furnished to the defendant in March and April, 1900. Writ dated December 15, 1900.

At the trial in the Superior Court before *Lawton,* J., it appeared that the plaintiff was a farmer in Colerain, and that the defendant was a corporation selling milk in Boston and in March and April, 1900, purchased milk from farmers in Colerain; that the milk was put by each farmer into cans furnished by the defendant, holding eight and one half quarts each, and payment was made monthly according to the number of cans furnished. These cans of milk were collected daily from the farmers by a teamster, carried to Greenfield and there delivered to an agent of the defendant upon a railroad car and transported under such agent's custody to Boston. The teamster was paid by the defendant a fixed price per can for each can of milk carried by him, which price was deducted from the sum agreed to be paid to

each farmer for a can of milk. The agent upon the railroad car of the defendant reported daily to the defendant the number of cans of milk received from the teamster. No record was kept by that agent or by the company of the number of cans furnished by each farmer, but each farmer had a number to which the milk was credited by the teamster. A pass book was furnished the teamster monthly by the defendant, in which to record daily the number of cans of milk furnished by each farmer. At the head of each page was entered the name of a farmer, and the page was so ruled, with numbers printed for the days from one to thirty-one, as to afford convenient columns for entering the number of cans of milk received and the number of cans returned. At the end of each month the teamster forwarded these books to the defendant by the defendant's agent upon the railroad car, and later received from that agent a sealed envelope. The teamster, who was called a collector, made his own arrangements with the farmers for the sum per can to be paid him. Two of these pass books, identified by the defendant's agent upon the railroad car, were offered in evidence by the plaintiff, and admitted by the judge against the objection of the defendant.

The plaintiff called as a witness the president of the defendant corporation, who testified in substance that the pass books exhibited to him bore the name of the defendant and were furnished by it; that he had no doubt that the writing on the covers of the pass books was put in by some one at the office of the defendant; that he did not see it done, but assumed such to be the fact "because they are written that way." In the course of his examination he was asked the following questions:

"Have you any question that those [entries on covers of books] were made out in the office?" "Have you any doubt that the figures, the writing, put in there were put in by some one at your office?" These questions were objected to by the defendant and allowed by the judge.

The defendant contended that whatever liquid purporting to be milk was delivered to it by the plaintiff, had been watered, and did not contain the amount of solids required by R. L. c. 56, §§ 55, 56. There was evidence tending to show that the liquid purporting to be milk, delivered by the plaintiff to the defend-

ant, contained water, and did not contain the amount of solids required by law.   This was denied by the plaintiff.

The judge instructed the jury, among other things, that the burden of proof was upon the defendant to satisfy them that the milk furnished by the plaintiff was not up to the standard, if such were the fact.

The jury returned a verdict for the plaintiff in the sum of $257.42 ; and the defendant alleged exceptions.

*F. L. Greene,* (*W. A. Davenport & F. M. Ives* with him,) for the defendant.

*D. Malone,* for the plaintiff.

LORING, J.   The exceptions in this case must be sustained.

By R. L. c. 56, §§ 56, 57, it is a criminal offence to sell milk which upon analysis is shown to contain less than the percentage of milk solids or milk fat there specified.   A contract for the delivery of any other kind of milk would not support an action. See in this connection *Miller* v. *Post,* 1 Allen, 434.   A contract to deliver milk means as matter of construction a contract to deliver milk up to the standard prescribed in R. L. c. 56, § 56, and a delivery of any other kind of milk would fail as matter of description to be a compliance with a contract to sell and deliver milk.   The burden was on the plaintiff to prove that the milk delivered by him was up to this standard.

The pass books seem to have been admissible in evidence without the testimony of the president of the defendant company which was objected to.   As we understand the bill of exceptions, the collector or teamster was paid both by the plaintiff and the defendant.   If so, he was their common agent, and a pass book kept by him was admissible against either.

*Exceptions sustained.*