383 A.2d 1332.

ANDREW GEREMIA *vs.* BENNY'S, INC. AND COOPER TIRE
AND RUBBER COMPANY.

MARCH 29, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J.   This is an appeal from a judgment of the Superior Court granting the defendants' motions for directed verdicts made at the close of the plaintiff's case. The action, based upon a theory of strict liability, was in-

stituted by the plaintiff, Andrew Geremia, against the defendants Benny's, Inc. and Cooper Tire and Rubber Company to recover damages for personal injuries suffered when an automobile tire that he was mounting exploded.

On December 16, 1970, George Loughery purchased two snow tires from defendant Benny's, Inc., a Rhode Island corporation engaged in the business of selling automobile parts and supplies. The tires had been manufactured by defendant Cooper Tire and Rubber Company. Within the next 2 weeks, plaintiff, an employee of Joe D's gas station in Providence, mounted both tires on rims at Loughery's request and, in March 1971, removed both tires from the rims. On January 19, 1972, Loughery asked plaintiff to mount the same snow tires on two recently purchased used rims.

The plaintiff testified that he had changed, repaired, and mounted tires for several years. An examination of the record indicates that the first snow tire was mounted without incident. The plaintiff stated that after he mounted the second tire on the rim and proceeded to inflate it, the top bead[1] blew off, and then "it took ahold of my thumb and just ripped it right back." As a result of this incident, plaintiff incurred medical bills, lost at least 6 weeks from work, and suffered some permanent injury to his left hand.[2]

Doctor Kenneth Mairs, a professor of metallurgy at the University of Rhode Island, testified as an expert witness for plaintiff. He stated that he had examined the tire in question. He described the bead as consisting of four wires, each of which encircled the opening of the tire five times, and noted the exact point of the break and the resulting 4 to

---

[1]A bead is the innermost section of a tire, which locks into the rim and holds the tire in position while it is being inflated.

[2]The plaintiff testified that he was sinistral and as a result of the injury was no longer able to bowl, draw, or perform heavy work.

6-inch tear. Doctor Mairs further testified that sixteen of the twenty wires in the bead unit were broken at the point of the tear while the remaining four wires had pierced the adjacent vulcanized rubber. This testimony was supported by X rays of the tire and photomicrographs of the ends of the severed wires highlighting the contrasting configurations. He ascribed the break in the wires to excess tension applied at that point. He stated that, based upon his interpretation of several metallurgical tests performed on the wires, each strand in the unit in question originally had a tensile strength of approximately 244 pounds. Theoretically, a tension in excess of 4,800 pounds would be required to completely rupture the bead at any one spot. Doctor Mairs excluded fatigue or shock loading as the source of the break.

At the close of plaintiff's case, defendants moved for directed verdicts. After viewing the evidence in a light most favorable to plaintiff, the trial justice found that there was no direct evidence of the existence of a defect in the design or construction of the tire and that there was no evidence from which the jury could find that a defect existed at the time the product left the hands of defendant. He held, therefore, that plaintiff had failed to establish the essential elements of an action for strict liability in tort articulated in *Ritter* v. *Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971), and granted defendants' motions. On appeal, plaintiff contends that he introduced sufficient evidence to warrant submitting the case to the jury and, therefore, the trial justice erred in directing verdicts for defendants.

On a motion for a directed verdict, a trial justice must view all the evidence in a light most favorable to the adverse party and is obliged to give such party the benefit of all reasonable and legitimate inferences which may be properly drawn therefrom without sifting and weighing the evidence or exercising independent judgment as to the credibility of witnesses. If, after taking such a view, there exists issues

upon which reasonable persons might draw conflicting conclusions, the trial justice should deny the motion and the issues should be left to the jury to decide. *Plouffe* v. *Goodyear Tire & Rubber Co.*, 118 R.I. 288, 373 A.2d 492 (1977); *Pimental* v. *D'Allaire*, 114 R.I. 153, 330 A.2d 62 (1975). On review, this court must examine the evidence in the same manner and fashion as the trial justice and is bound by the same rules which govern him. *Plouffe* v. *Goodyear Tire & Rubber Co.*, 118 R.I. 288, 373, A.2d 492. 492.

In order to prevail on a motion for a directed verdict, plaintiff was not required to show negligence. However, he was required to produce evidence that the tire was defective when it left the control of the supplier and that the defect was the proximate cause of the injury. *Id.; Romano* v. *Westinghouse Electric Co.*, 114 R.I. 451, 336 A.2d 555 (1975). The mere occurrence of a tire explosion does not establish that the tire was defective. The term "explosion" does not suggest the cause for the explosion, nor does it suggest whether the cause is of internal or external origin. *St. Paul Fire & Marine Insurance Co.* v. *Michelin Tire Corp.*, 12 Ill. App. 3d 165, 298 N.E. 2d 289 (1973).

After examining the record, we agree with the trial justice that plaintiff introduced no direct testimony concerning the cause of the break or the existence of an alleged defect. Rather, he relied upon circumstantial evidence, expert testimony, and physical exhibits to establish his prima facie case. The principle that probative circumstantial evidence may create the inferences of fact not otherwise subject to direct proof is entirely consonant with the theory of strict liability in tort. *Id.* No direct evidence need be introduced if circumstantial evidence permits the inference that the injury was caused by a defect existing at the time the product left the manufacturer's or seller's control. Accordingly, a plaintiff may rely upon circumstantial

evidence, and the inferences that may reasonably be drawn therefrom, to prove his case. *Cornell Drilling Co.* v. *Ford Motor Co.*, 241 Pa. Super. Ct. 129, 359 A.2d 822 (1976). However, plaintiff may not rely upon mere conjecture or speculation to establish the essential elements of his case. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622 (1975).

The cornerstone of plaintiff's cause of action is the existence of a defect at the time the snow tire left the control of the manufacturer or seller. Unless competent evidence is produced which will support the conclusion that it was then defective, the burden is not sustained. In order to ascertain whether a tire was defective when it left the manufacturer's or seller's control, one must consider its relative age, wear, storage, and whether it has been routinely and recently inspected. *Mullen* v. *General Motors Corp.*, 32 Ill. App. 3d 122, 336 N.E.2d 338 (1975). An examination of the record in this case discloses that the snow tire in question had been used by Loughery for one winter season prior to its explosion. The record is barren of any probative evidence relative to the extent of use or the manner of storage of the tire.

The record indicates that because of evidentiary rulings by the trial justice, which are not before this court, plaintiff's expert witness was precluded from disclosing his opinion as to whether or not plaintiff's conduct caused the explosion. Viewing the evidence in the light most favorable to plaintiff and resolving all ambiguities in favor of him, as we must, we are of the opinion that a person could not reasonably conclude that a defect existed in the tire when it was purchased by Loughery. Therefore, we conclude that the trial justice correctly granted defendants' motions for directed verdicts.

The plaintiff also contends that the trial justice abused his discretion in directing a verdict against him rather than involuntarily dismissing his action pursuant to Super. R. Civ. P. 50(a), which reads in pertinent part:

"When a motion for a directed verdict is made without resting at the close of the evidence offered by an opponent, the court in lieu of granting the motion may order the claim involuntarily dismissed, which dismissal shall be without prejudice."

According to the language of this Rule, a trial justice can only involuntarily dismiss a claim if he decides not to grant a directed verdict. On appeal, we may only consider the propriety of a trial justice's decision to grant or to deny a directed verdict or to involuntarily dismiss a claim. The trial justice's election to grant the motions for directed verdicts precludes us from examining the plaintiff's second contention because the plaintiff is not entitled to a two-tier review. We conclude that the trial justice was correct in granting defendants' motions for directed verdicts.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*John Quattrocchi, Jr.*, for plaintiff.

*Higgins, Cavanagh & Cooney, Kenneth P. Borden, James M. Micali,* for defendants.