Augustine BRIMBAU

v.

**AUSDALE EQUIPMENT RENTAL CORPORATION.**

No. 79–401–Appeal.

Supreme Court of Rhode Island.

Feb. 3, 1982.

Raymond A. LaFazia, Joseph A. Kelly, Providence, for plaintiff.

Higgins, Cavanagh & Cooney, Kenneth P. Borden, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court wherein the plaintiff was awarded $650,000 for personal injuries allegedly caused by the negligence of the defendant and by its leasing of defective construction machinery. This case was earlier tried in 1975 in the Superior Court, where a judgment for the plaintiff in the amount of $370,550 resulted. Subsequently, we sustained the defendant's appeal and remanded the case to the Superior Court for a new trial on all issues.

*Brimbau v. Ausdale Equipment Rental Corporation*, 119 R.I. 14, 29, 376 A.2d 1058, 1065 (1977). After the second trial, the defendant again appeals. We affirm the judgment below.

During the summer of 1966 the Marzano Construction Company (Marzano Construction), which is not a party to this action, was engaged in six construction projects, including operations in Wallingford, Connecticut, and in Warwick, Rhode Island. In mid-July, by oral agreement, the company leased a backhoe from defendant Ausdale Equipment Rental Corporation (Ausdale) and hired Rocco Marzano (Rocco), the president and treasurer of Ausdale, to operate the machine. Testimony below did not unequivocally establish the terms of the leasing and hiring. Concerning the leasing, statements ascribed to Rocco indicated that Ausdale leased the backhoe to Marzano Construction "on a monthly basis for two months" beginning "about the middle of July." John Marzano (John), president of Marzano Construction, in his testimony concurred that the lease began "about July 15" but stated that his company leased the backhoe either by the hour, by the day, by the week, or by the month. In regard to the hiring of Rocco, it is clear that at the time of the leasing Marzano Construction placed Rocco on its payroll as the backhoe operator and that Rocco operated the machine on the Rhode Island job. Although Rocco was present at the previous Connecticut job, the record does not disclose specifically that he functioned there as the backhoe operator, but he did replace a damaged wire.

On September 6, 1966, while the backhoe was engaged in "tough digging" in Connecticut, the steel cable that supported the backhoe's boom and bucket snapped, rendering the backhoe temporarily inoperable. No injuries resulted, and the backhoe resumed digging operations after Rocco had replaced the cable with the assistance of Marzano Construction's master mechanic and oiler.

Ten days later, on September 16, 1966, Marzano Construction employed the same backhoe at the Warwick, Rhode Island, construction site. Marzano Construction had contracted with the state to lay drainage pipe along the airport connector road. The company used the backhoe to lower eight-foot, 800-pound lengths of concrete pipe into an eight-foot-deep roadside trench.[1] The job foreman in each instance connected a section of pipe to a steel cable that hung from the backhoe's bucket. The backhoe operator then raised the boom and bucket, lifting the pipe, and swung the concrete section into position in the trench below.

A worker below then coupled the lowered length of pipe with the previously laid section; and while the backhoe lightly supported the section in its position on the ground, the worker and a coworker further secured the pipe by tamping dirt underneath. On September 16, 1966, Rocco operated the backhoe and Augustine Brimbau and another employee worked in the trench below.

At about 10:25 a. m., while Brimbau and his coworker were securing a length of pipe, the cable that supported the backhoe's boom and bucket again snapped without warning. The bucket crashed to the ground, glanced off a section of pipe, and struck Brimbau. Brimbau sustained extensive physical injuries and is now, according to the testimony, a pulmonary cripple completely unable to care for himself. At the time the cable snapped, it bore only ten to twenty pounds of pressure.

The plaintiff grounded his cause of action on three theories of liability: ordinary negligence, the doctrine of sole control, and strict liability. Because the jury returned a

---

1. Witnesses offered varying testimony about the exact weight of the pipe. Mr. Thomas Mullaney, a road engineer for the State of Rhode Island assigned to the job site in question, testified that the lengths of pipe weighed approximately 800 pounds each, while statements attributed to Rocco Marzano indicated that each section weighed 2000 pounds. The difference in testimony is of little consequence to this case, as it was the backhoe bucket rather than the pipe that struck Brimbau, and at the time of snapping the cable bore merely 10–20 pounds of pressure.

general verdict without special findings, we are unable to determine the exact theory or theories upon which the jury based its finding. The defendant asserts eleven grounds for reversal of the judgment. We find the assertions of error to be without merit. We shall address the issues generally in the order in which they were briefed.

I

## DID THE TRIAL JUSTICE COMMIT PREJUDICIAL ERROR IN HIS INSTRUCTIONS ON THE APPLICABLE LAW OF AGENCY?

■ The defendant in this case is a corporation, Ausdale Equipment Rental Corporation. Unquestionably, a corporation is responsible for the tortious conduct committed by its agents while acting within the scope of their authority. *Becker v. Beaudoin*, 106 R.I. 562, 568, 261 A.2d 896, 900 (1970). Thus, Ausdale Corporation would be liable for any negligent acts that Rocco committed in the course of serving as the president and treasurer of Ausdale.

The facts of this case present an unusual agency question. Rocco, now deceased, was the president and treasurer of Ausdale at the time of the events in question. Ausdale maintained its corporate headquarters at Rocco's home address, apparently owned but one backhoe, and had one person, Rocco, serving in all official positions. To say the least, Ausdale was the classic closely held corporation.

Ausdale entered into an informal, oral lease with Marzano Construction because Rocco was the uncle of John, the president of Marzano Construction. The men agreed that Ausdale would rent its backhoe to Marzano Construction and that Rocco would serve in the employ of Marzano Construction as the backhoe operator. Rocco was to receive an hourly wage and other employee benefits. The construction company was to supply an oiler to assist Rocco in the daily maintenance of the backhoe, but Ausdale was responsible for the machine's "normal wear and tear."

In leasing the backhoe to Marzano Construction, Rocco clearly acted as Ausdale's agent. The more complex factual question before the court was whether Rocco acted simultaneously as an employee of Marzano Construction and as an agent of Ausdale during the period he operated the backhoe. If Rocco was not then acting as Ausdale's agent, Ausdale would not be liable for Rocco's negligent operation or maintenance of the machine.

In *Brimbau I*, this court held that the facts did not compel a conclusion that, as a matter of law, Rocco acted as Ausdale's agent while operating the backhoe. *Brimbau v. Ausdale Equipment Rental Corp.*, 119 R.I. at 28, 376 A.2d at 1065. In that case this court overturned plaintiff's award because the trial justice instructed the jury that " '[at] the time of the incident in this case, he [Rocco Marzano] was acting within the scope of his authority as the agent of the defendant corporation.' " (Emphasis in original.) *Id.* at 26, 376 A.2d 1064. We held that the instruction was prejudicially misleading—the question of Rocco's agency was a question of fact to be decided by the jury. At 26, 376 A.2d at 1064.

In the case at bar defendant contends that the second trial justice ignored the teaching of *Brimbau I* and effectively charged the jury that Rocco acted as Ausdale's agent while operating the backhoe. We disagree.

The trial justice's instruction on the law of agency reflected a complete judicial detachment from the factfinding province of the jury. The court first instructed that a corporation acts only through its officers, agents, and employees, who in turn bind the corporation by the acts they commit or the knowledge they obtain when furthering the business of the corporation. The judge next directed the jury's attention to the fact that the man who leased the backhoe for Ausdale also operated the backhoe for Marzano. The court then cautioned,

"Now, without trying in any way to tell you what to decide or what not to decide, because I can not do that, I must discuss with you some of the legal aspects or ramifications of this situation."

The ramifications which the court discussed, in sum, were that a jury finding that Rocco was acting as an employee of Marzano Construction at the time of the alleged negligence did not preclude a concurrent finding that Rocco was also acting as president and treasurer of Ausdale. It is this instruction with which defendant takes issue. We do not see, however, how this charge could have misled the jury. The trial justice sought to clarify issues of fact and law which even experienced attorneys might find confusing. It is worth noting that the trial justice concluded his remarks on agency by telling the jury that Ausdale would be liable for Rocco's negligence *"if you find proven by a fair preponderance"* of the evidence that Rocco functioned dually as backhoe operator and as president and treasurer of Ausdale. (Emphasis added.) The charge was an accurate statement of the law of agency. Without question, one person may serve simultaneously as the agent of two independent principals. Restatement (Second) *Agency*, § 226, comment a at 498–99 (1958); *see Copeland v. Boston Dairy Co.*, 184 Mass. 207, 209, 68 N.E. 218, 219 (1903). In the case at bar, during the workday hours Rocco was required to function as servant to his master, Marzano Construction. Rocco's position as president and treasurer of the tiny Ausdale Corporation, however, required him to serve the purposes of that corporation whenever business needs so demanded. Thus, when Rocco put on the hat of a Marzano employee, he did not necessarily remove from his shoulders the cloak of Ausdale's authority. Therefore, the trial justice did not err in his instructions to the jury, nor did he abrogate the jury's factfinding role.

The defendant has also contended that because the agency instruction was prejudicially misleading, the court's subsequent instructions on negligence and sole control were consequently infected with error. The crux of the argument is the claim that the jury could not fairly decide whether or not Ausdale would be liable for Rocco's negligence because the trial judge prevented them from making a properly reasoned determination of the agency issue. We found no error in the agency charge and can thus discern no error in the instructions on negligence and sole control.

II

## DID THE TRIAL JUSTICE ERR BY REFUSING TO SUBMIT A WRITTEN INTERROGATORY TO THE JURY AT DEFENDANT'S REQUEST?

Rule 49(b) of the Superior Court Rules of Civil Procedure provides in part: "The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." The rule clearly places the submission of written interrogatories within the sound discretion of the trial judge. *See D'Arezzo v. John Hancock Mutual Life Insurance Co.*, 102 R.I. 56, 60, 228 A.2d 114, 116 (1967). We find the trial justice acted within the bounds of his discretion in denying defendant's request for submission of an interrogatory.

The defendant requested that the jury make the following special finding:
"Has the plaintiff proved by the greater weight of the evidence that Rocco Marzano was the employee of Ausdale while he was using/operating the backhoe during the term of the *lease?*"

The defendant asserts that the complexity of the factual and legal issues in this case mandated submission of the interrogatory to the jury. Absent a special finding on the agency question, defendant argued, the trial judge could not determine upon which count or counts the jury based its verdict. Had the jury responded in the negative to the interrogatory, defendant contends, on motion for new trial the judge would have focused his evidentiary analysis upon the count of strict liability. The defendant asserts that absent this finely honed inquiry the trial judge could not adequately evaluate the evidence supporting a verdict grounded in strict liability in tort.

The defendant greatly overstates the effect of the trial judge's refusal to submit

the interrogatory. The general nature of the verdict did not prevent the court from fully considering the issue of strict liability on motion for new trial. On the contrary, the general verdict required the justice considering a motion for new trial to weigh the evidence in light of all asserted theories of liability because he could not know upon which theory the jury based its verdict. The trial justice's rescript clearly establishes that he did indeed consider the evidence supporting the claim of strict liability as well as the evidence in support of other theories of liability. It was well within the trial judge's discretion to decline to submit to the jury the requested interrogatory since thereafter, on motion for new trial, he accepted the responsibility of weighing the evidence in light of all possible theories of liability.

## III

### DID THE TRIAL JUDGE PROPERLY INSTRUCT THE JURY ON THE APPLICABLE LAW OF STRICT LIABILITY?

Near the close of trial, the court permitted plaintiff to amend his complaint to include a claim for recovery grounded on strict liability in tort. The defendant does not challenge the granting of the motion to amend, but does take issue with the trial judge's instructions on the law of strict liability. The court instructed, in pertinent part,

"When a person or firm or a corporation is in the business of making a product or a machine and selling it to the public or leasing certain kinds of merchandise or machinery to the public, the manufacturer or the sellers of the machinery have an obligation under the law not to *sell or lease* the product or the machine that is in any way defective so as not to be reasonably safe for the purposes for which it was intended to be used. If a defective item is *sold or leased* and the defect causes àn accident while the product or the machine is being used for the purposes and in the manner in which it was intended to be used, and that defect

or accident causes damage to someone reasonably expected to be in or around or near the machine, then there is strict liability on the part of the lessor, *person leasing the defective machine or the manufacturer or seller of the defective machine.* * * * *He is liable, the seller if a defect existed at the time of the leasing.* * * * *[T]he liability will attach to the act of leasing* a defective product. * * * It is leased, but if it was defective *at the time of the leasing* and not reasonably safe for the purposes for which it was intended to be used, liability will attach." (Emphasis added.)

Although the trial judge instructed in his charge and defendant conceded in his brief that strict liability applies to the leasing or rental of consumer products, this court has never considered that issue. Our cases adopting and applying § 402A of the Restatement (Second) *Torts* (1965) relate only to the sale and manufacture of defective goods. *See Parrillo v. Giroux Company,* R.I., 426 A.2d 1313 (1981); *Geremia v. Benny's, Inc.,* 119 R.I. 868, 383 A.2d 1332 (1978); *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 336 A.2d 555 (1975); *Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971).

The doctrine of strict liability in tort originally developed in cases involving sales by manufacturers and retailers of unreasonably dangerous, defective products. *See Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1963); *Suvada v. White Motor Company,* 32 Ill.2d 612, 210 N.E.2d 182 (1965). In fact, the rule enunciated in § 402A of the Restatement (Second) *Torts,* which has been instrumental in guiding the adoption of strict products liability by the majority of states in this country, expressly refers only to the liability of *sellers* of consumer products. *See* Restatement (Second) *Torts,* § 402A, comment f at 350–51 (1965). Despite the early cases and the language of § 402A, however, the majority of jurisdictions that have considered the issue have

extended the doctrine of strict tort liability to commercial lessors of personal property.[2]

The policy considerations that impel imposition of strict liability upon manufacturers and sellers of dangerously defective goods apply with equal or greater force to lessors of potentially dangerous products or instrumentalities. Persons in the business of leasing, like manufacturers and sellers, continually introduce potentially dangerous instrumentalities into the stream of commerce and stand in a far better financial and technical position than lessees to insure against, prevent, and spread the costs of product-related injuries. Moreover, lessees of goods might have a lesser opportunity to inspect a leased item than would a purchaser, and would rely to a greater extent upon an implied assurance by the lessor that the product is safe for its intended purpose. An additional consideration is that lessors put a given product to a more sustained use than do retailers, introducing and reintroducing the product into the consumer market with each new lease. One product may thus benefit a larger consuming public, but that same product may also expose a greater number of persons to potential injury. These factors support the imposition of responsibility on lessors to ensure that the used product is in a reasonably safe condition each time it is leased. We therefore join those courts that have held persons in the business of leasing personal property strictly liable in tort for injuries proximately resulting from products that they lease in a defective condition, which renders such property dangerous.

The defendant takes issue with the language of the trial justice's instruction on strict liability. Under the law of strict liability, a seller or lessor will be liable only if at the point of sale or at the commencement of the lease the product was already defective. Thus, to hold a seller or lessor liable, a plaintiff must prove that the product was defective at the time it left the control of the seller or lessor. See Geremia v. Benny's, Inc., 119 R.I. at 873, 383 A.2d at 1334; Ritter v. Narragansett Electric Co., 109 R.I. at 190–91, 283 A.2d at 262–63. The defendant contends that the trial justice failed to instruct the jurors that they must find the product to have been defective "at the commencement of the lease" or "at the time it left the defendant's control." In fact, the trial justice instructed the jurors that liability would attach in the event that they found that the backhoe was defective "at the time of the leasing." We are of the opinion that this instruction was the substantial equivalent of the instruction urged by defendant.

In reviewing the language of the jury instructions, we do not indulge in drawing metaphysical semantic distinctions. It is our function to consider the manner in which the instruction "would be interpreted by a jury composed of ordinarily intelligent lay persons listening to it at the close of the trial." State v. Reid, 101 R.I. 363, 366, 223 A.2d 444, 446 (1966). Utilizing this standard and considering the instruction as a whole, we conclude that the meaning conveyed clearly indicated that the jurors were required to find the backhoe to have been defective either at the commencement of the lease or at the commencement of a renewal period thereof.

The defendant further contends that the jury should have been instructed to base its determination of liability upon whether the backhoe was defective "at the time it left the defendant's hands" rather than "at the commencement of the lease." The unusual facts of this case require a somewhat different application of these two phrases. It must be noted that the terms of the agreement between defendant and Marzano Construction provided for a leasing of the backhoe either on a monthly basis for a two-

2. See 52 A.L.R.3d 121, § 2 at 124–25 (1973); see, e.g., Price v. Shell Oil Co., 2 Cal.3d 245, 466 P.2d 722, 85 Cal.Rptr. 178 (1970); Stewart v. Budget Rent-A-Car Corp., 52 Haw. 71, 470 P.2d 240 (1970); Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965); Rudisaile v. Hawk Aviation, Inc., 92 N.M. 575, 592 P.2d 175 (1979); Fulbright v. Klamath Gas Co., 271 Or. 449, 533 P.2d 316 (1975); Francioni v. Gibsonia Truck Corp., 472 Pa. 362, 372 A.2d 736 (1977).

month period or on a weekly, daily, or hourly basis. Because of the different interpretations of which the evidence in this respect was susceptible, the jury might have made a variety of factual findings regarding the term and duration of the lease. The jury could have found that on September 16, 1966, the date of the accident, an original two-month lease was still in effect. Alternatively, however, the jury could have found that a new lease commenced on September 16 because the original two-month lease had concluded. Thereafter, the jury might have determined that a new daily or monthly lease began. By the same token, the jury could have determined that the initial lease had been made on a daily or monthly basis and that the term was renewable each day or each month.

Another unusual aspect of this case arises out of the possible finding by the jury that the backhoe remained in the hands and in the control of defendant throughout the period of its use by Marzano Construction. Certainly, the jury could have found that Rocco, Ausdale's president, was personally operating and maintaining the backhoe on September 16, 1966, and during the entire period of the lease prior thereto.

From the evidence in this case the jury also could have made a number of alternative findings in respect to the time when the backhoe became defective. Testimony revealed that backhoe cables generally have a useful life of three to four months. The first cable on the backhoe in question snapped after two months of use by Marzano Construction on a job in Connecticut. Testimony further indicated that Rocco replaced the cable in Connecticut and that the new cable snapped ten days later in Warwick, causing the instant accident involving plaintiff. There was further evidence from

which the jury could have found that at the time of the original leasing there was a worn sheave on the backhoe which had the effect of cutting and weakening the fiber of the cables, thus creating a danger of excessive wear to the cable and causing the ultimate failure and injury.[3] As a consequence, under the peculiar facts of this case, the instructions of the trial justice were neither erroneous nor prejudicial to defendant.

## IV

## ADDITIONAL ISSUES RAISED BY DEFENDANT

The defendant has raised several additional issues in its brief. We consider that the challenges are individually and cumulatively without merit and will, therefore, discuss summarily the points raised.

### A

■ The defendant asserts that the trial justice's instructions in respect to the doctrine of sole control were inadequate. We disagree. Although the trial justice rejected defendant's requested instructions on this issue, he explained the theory of sole control or res ipsa loquitur to the jury in terms consonant with our then-controlling decision of *Goyette v. Sousa*, 90 R.I. 8, 153 A.2d 509 (1959).[4]

### B

■ The trial justice denied two motions by defendant for directed verdict, one seeking a directed verdict on the strict-liability count and the other on the count of sole control. In order to prevail on a motion for directed verdict, the moving party

3. Alternatively, the jury might have found that the cable became defective sometime after the commencement of the original lease period in mid-July, but prior to the commencement of a new daily, weekly, or monthly term beginning September 16. Application of strict liability on these facts and in this case would work no undue hardship upon the defendant. At the time of the injury, and for some period prior, the backhoe was operated by the president and

treasurer of Ausdale, Rocco Marzano. Thus, the jury could have found that at the commencement of a new lease period, the backhoe remained within the hands and control of the lessor.

4. Our most recent, definitive pronouncement on the doctrine of sole control may be found in *Parrillo v. Giroux Co.*, R.I., 426 A.2d 1313 (1981).

must sustain the burden of establishing, in regard to the issue in question, that there is no material question of fact. The trial justice must view the evidence in the light most favorable to the opposing party, without weighing the evidence or considering the credibility of witnesses. *DaVinci Creations, Inc. v. Nu-Frame Co.*, R.I., 418 A.2d 851 (1980); *Montuori v. Narragansett Electric Co.*, R.I., 418 A.2d 5 (1980). The court must deny the motion if, after so construing the evidence and drawing all reasonable inferences supporting the position of the nonmoving party, the court finds issues of fact upon which reasonable persons might differ. *Johnson v. Palange*, R.I., 406 A.2d 360 (1979); *Nagy v. McBurney*, R.I., 392 A.2d 365 (1978); *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242 (1977). We have previously pointed out in section III of this opinion that issues of fact susceptible of various findings existed in respect to the issue of strict liability. Regarding the theory of sole control, a jury could have found that an agent of Ausdale controlled the operation and maintenance of the backhoe throughout the term of the lease and that the type of failure that occurred would not have happened in the absence of negligence. *See Brimbau v. Ausdale Equipment Rental Corp.*, 119 R.I. at 24, 376 A.2d at 1063. Thus, a question of fact was presented concerning each issue that underlay the doctrine of sole control. *See Parrillo v. Giroux Co.*, R.I., 426 A.2d 1313 (1981).

### C

▮ Late in the trial proceedings the court allowed plaintiff to amend his complaint to include an allegation of strict liability. The judge granted defendant a one-half-day continuance, and in that short time defendant obtained an expert to refute the evidence proffered by plaintiff's witnesses that the backhoe was defective. The defendant's expert based his opinion that the backhoe was not defective on the reports and records of plaintiff's experts. The plaintiff impeached the witness's opinion on re-cross-examination by establishing that defendant's expert had not read the reports in full. The defendant then sought to reha-bilitate its witness by calling to the jury's attention the time constraints imposed upon the expert and upon defendant by the late-filed amendment. The trial justice refused to admit such evidence, and defendant now attacks that ruling as prejudicial error. The defendant asserts that the impeachment testimony created an impression on the jury of the witness's incompetence, which impression the judge did not allow defendant to rebut properly. We are of the opinion that legal rulings by the trial justice relating to amendment of pleadings are not an appropriate subject to be submitted to the jury. Consequently, it was certainly within the trial justice's discretion to exclude matter relating to the time of the amendment. In the event that the time constraints imposed upon defendant required relief, an appropriate request should have been directed to the trial justice. This would not include the raising of an issue of fact for the jury. Further, the transcript discloses that the testimony elicited on re-cross-examination of defendant's expert was well within the bounds of propriety and was not improperly prejudicial to defendant.

### D

▮ The defendant also contends that the trial justice permitted plaintiff's expert, Kendall Moultrop, to offer an opinion on the ultimate issue of the safety of the cable which was grounded solely upon the fact that an accident had occurred. This contention is not justified by the record. An examination of the testimony of plaintiff's expert discloses that his opinion concerning the defective backhoe cable was grounded upon evidence completely independent of the fact that an accident did occur.

### E

▮ The defendant's final assertion of error is that the trial justice wrongfully denied defendant's motion for new trial. The allegations in support of the motion for new trial are twofold: that the trial justice overlooked material evidence and was clear-

ly wrong in finding that the cable examined by plaintiff's experts was in fact the cable that snapped at Warwick on September 16, 1966, and that the trial justice was clearly wrong in deciding that the jury verdict was not the result of passion, prejudice, and sympathy. We do not believe that the trial justice erred in either finding.

Although the testimony concerning the identity of the cable whose failure caused the injury was not sufficient to resolve all doubts, it was adequate upon which to base an inference that the cable examined by the various experts was in fact the cable that precipitated plaintiff's injury.[5] The trial justice cannot be faulted for drawing such an inference.

In regard to the allegation of passion, prejudice, and sympathy, the trial justice stated in his decision that the plaintiff's counsel in his final argument had not " 'whipped the jury up into an emotional frenzy.' " The trial justice observed further that "[i]f final argument by plaintiff's counsel was effective, that is what would be intended." Because the trial justice, and not we, witnessed counsel's closing argu-

ment, we must accord great weight to his observations regarding the emotional attitude of the jury. A reading of the transcript of the final argument of the plaintiff's counsel in the light of the deference to be accorded to the trial justice's front-row seat impels us to agree that the trial justice did not err in finding that the jury was appropriately influenced rather than improperly inflamed by the argument of the plaintiff's counsel.

For the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.

MURRAY and SHEA, JJ., did not participate.

---

5. For example, Edward Hoppin, a witness for plaintiff, testified without equivocation that the cable upon which various tests were later performed was delivered to him by Rocco on or about January 11, 1967, in a wooden crate.