**Anthony J. RUZZO, Sr. et al.**

v.

**LaROSE ENTERPRISES d/b/a Taylor Rental Center et al.**

**No. 97–620–Appeal.**

Supreme Court of Rhode Island.

March 30, 2000.

---

Michael T. Eskey, James A Ruggiero, Providence, for Plaintiffs.

Thomas R. Bender, Lauriston A. Parks, Providence, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

GOLDBERG, Justice.

This is an appeal from the entry of summary judgment in favor of the defendants, LaRose Enterprises, d/b/a Taylor Rental Center (Taylor), and Douglas La-Rose, the president of Taylor. The plaintiff, Anthony J. Ruzzo, Sr. (Ruzzo), entered into a rental agreement with the defendants for the use of a plumbing tool typically referred to as a "power snake."[1] The agreement contained an exculpatory clause (hereinafter disclaimer clause) disclaiming all liability on the part of Taylor for a host of eventualities, including personal injury and property damage arising from a defect in the plumbing tool. It appears from the evidence that the power snake malfunctioned while Ruzzo was in

---

1. For the purpose of this opinion, we are satisfied with the plaintiffs' description of a power snake as "a thick, flexible, metal wire or cable of varying lengths that can be introduced into and negotiated through a system of pipes to clear an obstruction. A penetrating head at the lead end of the snake is rotated inside the pipe by turning the cable outside the pipe either manually or by a power motor."

the process of operating it, and as a result Ruzzo was shocked severely and suffered serious personal injuries. Thereafter, Ruzzo filed a five-count complaint sounding in tort and contract.[2] On July 17, 1997, summary judgment was entered on all counts, primarily on the basis of the disclaimer clause. For the following reasons, we affirm the judgment in part, and reverse in part. The facts are taken from the pleadings and record filed by the parties.

## Facts and Travel

On June 27, 1994, Ruzzo rented a power snake (snake) from Taylor on Post Road in Warwick, to clear a clogged pipe in the cellar of one of his rental properties. Ruzzo acknowledged owning numerous rental properties, and it was his practice to perform most of the maintenance and repairs, occasionally hiring a carpenter or plumber when needed. Ruzzo had rented snakes from Taylor numerous times in the past. On this occasion, the transaction was recorded on Taylor's two-sided, preprinted, standard form contract. Taylor collected a $30 deposit and $29.43 in "advance charges" from Ruzzo, and Ruzzo signed the agreement. We note that the agreement form contained three certain classifications of the lessee as: (1) "homeowner," (2) "contractor," and (3) "other commercial." Although it is unclear who checked it off, the classification of "homeowner" was indicated on the contract. Although we recognize the distinction in classifying the lessee as either a consumer or a commercial lessee with respect to the application of various provisions in the Uniform Commercial Code, in the context of this case, we are satisfied that Ruzzo was a consumer. Two paragraphs above Ruzzo's signature on the contract was a clause concerning numerous terms and conditions governing the transactions. That clause provided that, "THE BACK OF THIS CONTRACT CONTAINS IMPORTANT TERMS AND CONDITIONS[,] INCLUDING *TAYLOR'S DISCLAIMER* FROM ALL LIABILITY FOR INJURY OR DAMAGE AND DETAILS OF RENTER'S OBLIGATIONS FOR RENTAL AND OTHER CHARGES AND RESPONSIBILITIES TO CARE FOR AND RETURN THE ITEMS RENTED. *THEY ARE PART OF THIS CONTRACT—PLEASE READ THEM.*" (Emphasis in original.) Taylor's disclaimer, on the back of the form, provided:

> "3. RESPONSIBILITY FOR USE AND DISCLAIMER OF WARRANTIES[.] You are responsible for the use of the rented item(s). You assume all risks inherent in the operation and use of the item(s) and agree to assume the entire responsibility for the defense of, and to pay, indemnify and hold Taylor harmless from, and hereby release Taylor from, any and all claims for damage to property or bodily injury (including death) resulting from the use, operation or possession of the item(s), whether or not it be claimed or found that such damage or injury resulted in whole or in part from Taylor's negligence, from the defective condition of the item(s) or from any cause. YOU AGREE THAT NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE HAVE BEEN MADE IN CONNECTION WITH THE EQUIPMENT RENTED."

Upon arriving at the rental property, Ruzzo undertook the task of clearing the clogged pipe. After plugging the snake into an extension cord, he began to feed

---

**2.** Count 1 requested relief under breach of express and implied warranties. On appeal, plaintiffs assert error only with regard to the implied warranty claim being summarily decided; count 2 requested relief under strict liability, alleging that the power snake was in a defective condition and was unreasonably dangerous when it left the possession of the defendant; count 3 was a loss of consortium claim by Marie T. Ruzzo, Ruzzo's wife; count 4 asserts relief under negligence; and count 5 requests relief under the doctrine of res ipsa loquitur.

the power snake into the clogged pipe. Ruzzo asserted that shortly after he began using the snake, a blue flash erupted from the pipe, which caused his body to begin "bouncing all over the place." A rescue unit was called, and Ruzzo was treated for injuries resulting from severe electrical shock.

As a result of this experience, Ruzzo filed suit on August 3, 1995, claiming breach of warranty, negligence, strict liability, and loss of consortium.[3] On March 11, 1997, defendants moved for summary judgment, asserting that plaintiffs' breach of warranty claims were invalid on the basis of the disclaimer clause. On June 9, 1997, summary judgment was granted in favor of defendants. However, because a question arose with respect to whether summary judgment was entered on all counts or on only the warranty claims, plaintiffs objected, and a subsequent hearing was held on July 14, 1997. At that hearing, the motion justice heard additional arguments, and ordered that summary judgment be entered on all counts based on the disclaimer. The plaintiffs then filed this timely appeal.

### Standard of Review

 "It is well settled that this Court reviews the granting of a summary judgment motion on a de novo basis." *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455 (R.I.1996)). In conducting such a review, we are bound by the same rules as those that governed the trial justice, and "[a]ccordingly, we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996). "Moreover, a party who opposes a motion for summary

judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996).

### Discussion

Ruzzo first argued on appeal that the motion justice erred when he granted summary judgment on the strict liability claim on the basis of the disclaimer clause. Ruzzo asserted that the motion justice misapplied the law when he enforced the disclaimer clause based on contract principles governed by the Uniform Commercial Code (UCC), and not on the doctrine of strict liability in tort. In response, Taylor argued that Ruzzo failed to raise and preserve this issue for review, thereby waiving his right to assert that the disclaimer clause was unenforceable with respect to the strict liability claim. Taylor further maintained that even if the issue had been properly raised and preserved for review, the disclaimer clause was enforceable, and the motion justice was correct in applying it against Ruzzo's strict liability claim.

### I

### Waiver

 "No principle of appellate review is better settled in this state than the doctrine that this [C]ourt will not consider an issue raised on appeal that has not been raised in reasonably clear and distinct form before the trial justice." *Town of Smithfield v. Fanning*, 602 A.2d 939, 942 (R.I.1992). In the instant case, the record reveals that Ruzzo adequately raised the issue before the motion justice and preserved his right to argue the issue before us. First, our review of the record indicates that defendants' supplemental memorandum in support of their motion for

---

**3.** Inasmuch as the loss of consortium claim by Marie T. Ruzzo is derivative, our determi-

nation of Ruzzo's claim will necessarily determine her claim.

summary judgment addressed only Ruzzo's request for relief under his breach of warranty claim, and therefore the confusion that ensued over whether the motion justice's initial decision to grant summary judgment covered all claims was justified. Appropriately, a second hearing was held, and the issues (including strict liability) were argued before the motion justice. At the hearing, Ruzzo argued that summary judgment should not be granted in light of the doctrine of strict liability in tort grounded in public policy, and cited ample authority for this defense to summary judgment.[4] The motion justice made clear that he was entering summary judgment on all claims, including strict liability, on the basis of the disclaimer clause.[5]

Having determined that the issue of strict liability in tort was argued before the hearing justice, and that there was ample authority cited to support this argument, we are satisfied that the issue was raised in a reasonably clear and distinct form and therefore was adequately preserved for review.

## II

### Strict Liability in Tort and Negligence Disclaimer

In *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 187, 283 A.2d 255, 261 (1971), we adopted the rule of strict liability in tort in cases involving injury resulting from defective chattels. We noted that the Restatement (Second) *Torts* § 402A (1965) properly set forth the doctrine of strict liability in tort. *Ritter*, 109 R.I. at 188, 283 A.2d at 261. Section 402A provides:

> "Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> "(2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Our adoption in *Ritter* of strict liability in tort was therefore guided by the rationale underlying § 402A.[6]

4. The pertinent testimony at the July 14 hearing is as follows:

> Counsel for Ruzzo: "[W]e have to get to the effect of that clause. That clause, your Honor, if we were to give * * * that clause effect flies in the face of public polic[y] consideration[s]. In the Supreme Court in its decisions, our Supreme Court said *when it adopted strict liability in tort,* it said * * * 'Who should be responsible?' "
>
> * * *
>
> "I say the exculpatory language does not cover the case of *Ritter v. The Narragansett Electric*." (Emphasis added.)

We note also that Ruzzo's attorney cited *Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292 (R.I.1982) (applying strict liability in tort to leases).

5. At the conclusion of the hearing, the motion justice stated:

> "the [c]ourt believes that as a matter of Rhode Island law, and despite what you have articulated as a public policy, in the absence of a contractual provision to the contrary, but here we have a contractual provision to the contract that there in fact, can be a disclaimer of liability, and that this case presents such a position. Therefore, the [c]ourt finds and would ask that you enter a judgment or an order * * * making it abundantly clear that it applies to each and every one of the counts in the complaint * * *."

6. In *Buonanno v. Colmar Belting Co.*, 733 A.2d 712 (R.I.1999), we had occasion to consider that portion of the Restatement (Third)

We noted in *Ritter* that "[i]t is generally accepted that § 402A had its genesis in the doctrine of strict liability in tort formulated by * * * the Supreme Court of California in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897." *Ritter*, 109 R.I. at 188, 283 A.2d at 262; *see also Romano v. Westinghouse Electric Co.*, 114 R.I. 451, 457, 336 A.2d 555, 558 (1975). In *Ritter*, we quoted the doctrine espoused in *Greenman* :

> " '[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' * * * 'The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. * * * To establish the manufacturer's liability, it was sufficient that plaintiff proved that he was injured while using the [product] in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the [product] unsafe for its intended use.' " *Ritter*, 109 R.I. at 189, 283 A.2d at 262.

In *Ritter*, we further recognized the extension of "the concept of strict liability in tort for injuries resulting from a defectively designed product to the retailer selling the product." *Id.* (citing *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964)).

We note that § 402A expressly refers only to the liability of sellers of consumer products, therefore because the majority of jurisdictions also were guided by § 402A, strict liability in tort originally developed in cases involving sales by manufacturers and retailers of unreasonably dangerous and defective products. *See* Restatement (Second) *Torts* § 402A, cmt. f at 350–51; *see also Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1297 (R.I.1982) (citing *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965)).

However, in *Brimbau*, 440 A.2d at 1298, we extended the doctrine of strict liability in tort to commercial lessors of personal property. In so holding, we noted that "[t]he policy considerations that impel imposition of strict liability upon manufacturers and sellers of dangerously defective goods apply with equal or greater force to lessors of potentially dangerous products or instrumentalities." *Id.* We likened lessors to manufacturers and sellers because they too continually introduce potentially dangerous goods into the stream of commerce and are "in a far better financial and technical position than lessees to insure against, prevent, and spread the costs of product-related injuries." *Id.* Moreover, we noted in *Brimbau* that lessees rely more upon the assurances of the lessor that the product is fit for its intended purpose, because they may have less of an opportunity to inspect the leased item than would an ordinary purchaser. *Id.* Further, lessors put a given product to a more sustained use than do retailers; thus a

---

*Torts* § 5, entitled "Liability of Commercial Seller or Distributor of Product Components for Harm Caused by Products Into Which Components Are Integrated," in the context of a claim for liability on the part of a seller, manufacturer and distributor of component parts of a conveyor belt system. We adopted § 5 of the Restatement (Third) *Torts* as it related to the imposition of liability upon a supplier of a component part that is defective in itself or who substantially participates in the integration of the component into the design of the product. *Buonanno*, 733 A.2d

at 716. Although the Restatement (Third) *Torts* redefines and expands upon the doctrine espoused in the Restatement (Second) *Torts* § 402A, we note that comment (m) of § 402A, about which we concern ourselves today, has been adopted in its entirety in the Restatement (Third) *Torts* § 18 (1998), entitled "Disclaimers, Limitations, Waivers, and Other Contractual Exculpations as Defenses to Products Liability Claims for Harm to Persons." *See* Restatement (Third) *Torts* § 18, reporters' note to cmt. (a).

single product may be introduced and reintroduced into the stream of commerce, thereby exposing a greater number of persons to potential injury. *Id.*

The instant case pertains to a lease of a product, and therefore in light of *Brimbau,* we are satisfied that strict liability in tort principles apply to the facts of this case. As noted, our analysis of strict liability in tort has been gleaned from § 402A of the Restatement (Second) *Torts.* However, here, as in *Ritter,* we note that § 402A is accompanied by a comprehensive commentary as to its meaning and application, and therefore we do not believe it necessary to enter into a full discussion of the application of § 402A other than to direct attention primarily to comment m, which declares that strict liability is a cause of action in tort, and therefore traditional notions of contract law do not apply. In addressing the issue of strict liability, comment m attempts to clarify the application of liability, including a notation that many courts have analogized this liability to that of a warranty theory in that the liability attaches by either running with the goods sold or by being made directly to the consumer without privity of contract. Although recognizing that this theoretical basis may be helpful in understanding the concept of strict liability, the comment contains a warning that by analogizing this liability to a warranty theory, courts may be apt to confuse this liability with a contract of sale and thus apply traditional contract principles. Thus, the drafters were careful to point out that the "warranty" theory of strict liability "is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales." Restatement (Second) *Torts* § 402A, cmt. m.

Therefore, having established that strict liability in tort is a different kind of animal, not subject to the UCC as it applies to warranties and disclaimers, we shall examine its application as it applies to the snake in this case. Notably, comment m provides:

"The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, *and it is not affected by any disclaimer or other agreement,* whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands." (Emphasis added.)

Thus, we are satisfied that the motion justice erred when he determined that the disclaimer provision was a bar to Ruzzo's strict liability in tort claim. In so doing, the motion justice misapplied the law and incorrectly invoked traditional principles of contract law in rejecting this tort claim. We conclude that Ruzzo's strict liability cause of action is independent of the contract, and therefore any contractual provisions, agreements or disclaimers are unenforceable with respect to this claim. We hold that as a matter of law, strict liability in tort for personal injuries resulting from a defectively designed product cannot be disclaimed by one who " 'places [a product] on the market, knowing that it is to be used without inspection for defects, [that] proves to have a defect that causes injury to a human being.' " *Ritter,* 109 R.I. at 189, 283 A.2d at 262. Therefore, we conclude that the motion justice committed error when he entered summary judgment as to Ruzzo's strict liability in tort claim on the basis of the disclaimer clause.

Further, we are persuaded that the policy considerations that underlie the rejection of disclaimers for strict liability in tort apply with equal force to personal injuries arising out of a defendant's negligence. In *Brimbau,* we declared that it is typically the manufacturer, seller, or lessor who is in a far better position to insure and guard against the risk of personal injury resulting from a defect in the product. 440 A.2d at 1298. This policy must necessarily apply to cases in which the injury arises from the negligence of the manufacturer, seller, or lessor. Here,

Ruzzo had signed the preprinted standard form contract for a three-hour rental of a snake that he previously had used numerous times. The snake was subject to constant use and, with the exception of the rental periods, was under the custody, control, and maintenance of Taylor. We recognize that it would be overly harsh and against public policy to require Ruzzo (or any lessee or purchaser for that matter) to insure against or assume the risk of personal injuries resulting from Taylor's negligent failure to inspect and repair. Rather, it is the manufacturer, supplier, seller or lessor who can best insure against this risk, and may in turn factor "the annual premiums into [their] overhead, and thus spread the cost of the injury among the general public." *Romano,* 114 R.I. at 462, 336 A.2d at 561. Therefore, we hold that as a matter of law, manufacturers, sellers, or lessors who enter a defective product into the stream of commerce cannot disclaim liability for personal injuries arising out of their own negligence. Thus, we conclude that the motion justice committed error when he enforced the disclaimer provision against Ruzzo's negligence claims and entered summary judgment on that basis.

## III

### The Warranty Disclaimer

Ruzzo contends that the trial justice erred when he entered summary judgment for Taylor on the implied warranty claims. To be effective, disclaimers of implied warranties must meet certain statutory requirements in accordance with G.L.1956 § 6A–2.1–214. A disclaimer of the implied warranty of merchantability must be in writing, be conspicuous, and the language must mention "merchantability." Section 6A–2.1–214(2). A disclaimer of the implied warranty of fitness for a particular purpose must also be in writing, be conspicu-

ous, and contain language to the effect that "[t]here is no warranty that the goods will be fit for a particular purpose." *Id.* Ruzzo does not dispute that the warranty disclaimer met all of these statutory requirements. Rather, Ruzzo contends that the disclaimer was unconscionable, and therefore unenforceable.

Section 6A–2.1–108(1) provides that,

"[i]f the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Although the disclaimer of warranties provision is in full compliance with the UCC provisions in terms of its conspicuousness and language, we conclude that in Rhode Island, a disclaimer for personal injuries arising from the use of a consumer product introduced into the stream of commerce is "unconscionable." Moreover, the UCC by its own terms purports to exclude a disclaimer for consequential damages for personal injuries in connection with consumer leases and declares such disclaimers to be prima facie unconscionable.[7] Because our holding today with respect to warranty disclaimers is consistent with § 6A–2.1–503(3) as it relates to disclaimers for personal injuries arising out of consumer transactions, we need not address other aspects of the UCC, except to state that the responsibility of a manufacturer, supplier or lessor of consumer goods to refrain from negligence or from introducing a defective product into the stream of commerce is not overcome by the UCC. Accordingly, because this was a consumer lease, we conclude

---

**7.** General Law 1956 § 6A–2.1–503(3) provides in pertinent part:

"Limitation, alteration, or exclusion of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable * * *."

**270**

that the trial justice erred in granting summary judgment on this basis.

## IV

### The Claim Against LaRose Individually

Finally, Ruzzo contends that the motion justice erroneously granted summary judgment in favor of Douglas LaRose (LaRose), the president of LaRose Enterprises, the corporation that operated Taylor. Ruzzo named LaRose in his individual capacity, alleging that LaRose participated in the negligent inspection and maintenance of the snake, and was therefore personally liable for Ruzzo's injuries. Specifically, Ruzzo objected to summary judgment on the grounds that a dispute existed concerning the extent of LaRose's participation, and as a consequence, summary judgment was precluded as a matter of law. We disagree.

In regard to the personal liability of an officer or director of a corporation for injuries to third persons arising out of the conduct of other employees, we have recognized that "[a]n officer or a director of a corporation is not, merely as a result of his standing as such, personally liable for torts of corporate employees; *to incur responsibility he must ordinarily be shown to have in some way participated in or directed the tortious act.*" (Emphasis added.) *Banks v. Bowen's Landing Corp.,* 652 A.2d 461, 463 (R.I.1995) (quoting W.A. Harrington, Annotation, *Personal Civil Liability of Officer or Director of Corporation for Negligence of Subordinate Employee Causing Personal Injury or Death of Third Person,* 90 A.L.R.3d 916, § 2 (1979)).

■ In the case at bar, the motion justice, after examining the evidence, concluded that there was no evidence to support a finding that LaRose participated in the inspection and maintenance of the snake. LaRose submitted an affidavit stating that as a *general practice, he did* not participate in the inspection and maintenance of power snakes at the time Tay-

lor entered into the lease with Ruzzo in 1994. Further, he stated that to his knowledge, he neither inspected the snake nor performed any repairs on it. In turn, with the lone exception of an answer to an interrogatory in which LaRose stated that any number of people inspected and performed maintenance work on the snake, including himself, Ruzzo presented no other evidence that LaRose participated in the inspection and maintenance of this particular snake. In light of this factual background, we agree with the motion justice and conclude that Ruzzo did not meet his burden of proving by competent evidence that LaRose participated in the inspection and maintenance of the snake in question, and therefore summary judgment was appropriate.

## Conclusion

For the foregoing reasons, the plaintiffs' appeal is denied in part and sustained in part. The judgment is affirmed in part and reversed in part. The papers in this case are hereby remanded to Superior Court for further proceedings consistent with this opinion.